TERRITORY OF HAWAII *v.* JOSEPH
KAHOLOKULA ET AL.

NO. 2657.

SUBMITTED OCTOBER 28, 1947.          DECIDED NOVEMBER 26, 1947.

KEMP, C. J., PETERS AND LE BARON, JJ.

626

OPINION OF THE COURT BY PETERS, J.

This is an indictment for riot and unlawful assembly. Appellants filed a demurrer or motion to quash. It was overruled and the ruling is here for review upon an interlocutory bill of exceptions.

The grounds of the demurrer or motion to quash challenging the sufficiency of the indictment are both general and special. Under the general ground "That the indictment and each count thereof fails to charge the defendants or any of them, with the commission of any crime," appellants argue (a) that neither the riotous acts described in the indictment nor industrial disputes, affrays or ordinary breaches of the peace punishable under other provisions of law are within the prohibitions of the statutes defining riot or unlawful assembly; (b) that an order to disperse and refusal to do so is an essential element of the offense of unlawful assembly and riot, and in the absence of allegations to that effect the indictment is fatally defective; (c) that the indictment fails to allege that any persons named or unnamed intended to or were exercising rights and were prevented from doing so by the appellants; (d) that it affirmatively appears from the indictment that the appellants were participants in a labor dispute and that the riotous acts alleged therein amount to no more than picketing; (e) that the indictment fails to meet the requirements of the Sixth Article of the Amendments to the

Constitution of the United States in that it fails to describe the alleged riotous acts, the menacing language used and the gestures and other hostile signs and demonstrations tending to strike terror into others.

Under the special grounds of the demurrer or motion to quash appellants urge (1) that the unlawful assembly and riot statutes of the Territory are, in themselves or as applied to the appellants, unconstitutional and void because they violate the right of free speech and assembly guaranteed by the First Amendment to the Constitution of the United States; (2) that the unlawful assembly and riot statutes of the Territory are vague and indefinite so that men of common intelligence must necessarily guess at their meaning and differ as to their application and hence violate the Fifth and Fourteenth Amendments to the Constitution; (3) that the unlawful assembly and riot statutes as applied to the appellants contravene substantive rights guaranteed by the Clayton and Norris-LaGuardia Acts.

The indictment contains three counts. The first two counts of the indictment, though differing slightly in form, are substantially the same. They allege an unlawful assembly and riot in the words of the statutes (R. L. H. 1945, §§ 11570, 11571), with the additional allegations of a common intent to riot and concert of action in furtherance of such intent. In both counts the riotous acts alleged are "assaulting," "shoving" and "pushing." The violence alleged is "menacing language," "gestures," and "other hostile signs and demonstrations tending to strike terror into others." Count three of the indictment differs from the first and second counts in alleging that the appellants, at the same time and place, "did unlawfully and feloniously assemble together with intent to, and did, aid, countenance, incite and encourage each other, by conduct

striking and tending and intending to strike terror into others, including certain employees of the Maui Agricultural Company, Limited, a Hawaiian Corporation [naming said employees], and others, to-wit, by disturbance, tumult and violence and menacing language and hostile signs and demonstrations, to prevent said employees from entering the premises of said corporation for the purpose of proceeding to the place of and engaging in their employment, thereby unlawfully depriving said [naming said employees] of their rights and endangering the liberty of the said [naming said employees]."

Revised Laws of Hawaii 1945, chapter 277, sections 11570 to 11584, both inclusive, are concerned with riots and unlawful assemblies. Section 11570 defines the term "unlawful assembly" as used in chapter 277, and section 11571 defines "riot." Both sections are quoted in the margin.[1] Sections 11572, 11573 and 11574 are explanatory of the statutory definitions of the offenses of unlawful assembly and riot. Section 11572 qualifies the word "violence" as used in the definition of unlawful assembly and riot; section 11573 the extent of the concurrence of intent necessary to constitute riot. Section 11574 negatives the necessity of the participants in an unlawful assembly or riot to have come together with a common or unlawful intent or in any unlawful manner or that the act done or intended to be done should of itself be unlawful, declaring

---

[1] "Sec. 11570. Unlawful assembly defined. Where three or more persons are, of their own authority, assembled together with disturbance, tumult and violence, and striking terror or tending to strike terror into others, such meeting is an unlawful assembly, within the meaning of the provisions of this chapter."

"Sec. 11571. Riot defined. A riot is where three or more being in unlawful assembly join in doing or actually beginning to do an act, with tumult and violence, and striking terror, or tending to strike terror into others."

that the tumult and violence tending to excite terror characterizes the offense though the participants may have assembled in a lawful manner and though the object of the meeting, if legally pursued, or the act done or intended, if performed in a proper manner, would be lawful. Section 11575 makes persons present at a riot or unlawful assembly and promoting the same or aiding, abetting, encouraging or countenancing the parties concerned therein by words, signs, acts or otherwise, parties thereto and principals therein. Section 11576 makes persons present but not personally participating in an unlawful assembly who voluntarily remain after the unlawful assembly has been ordered to disperse by anyone having legal authority so to do, except to keep the peace, parties concerned in unlawful assembly. Section 11577 creates a presumption of knowledge of the existence of an order of dispersal upon all persons present in an unlawful assembly. Sections 11578 and 11579 fix the penalties for persons found guilty of unlawful assembly or riot. These sections are quoted in the margin.[2] The provisions of section 11580 make it possible for a jury upon indictment for riot or unlawful assembly, as described in section 11579, to bring in a verdict of guilty of any offense mentioned in section 11578. This

---

[2] "Sec. 11578. Penalty where object is injury of house, etc. Whoever is guilty of a riot or unlawful assembly, having for its object the destruction or injury of any house, building, bridge, wharf, or other erection or structure; or the destruction or injury of any ship or vessel, or the furniture, apparel or cargo thereof, shall be punished by imprisonment at hard labor not more than two years, or by fine not exceeding five hundred dollars; and shall also be answerable to any person injured to the full amount of his damage."

"Sec. 11579. Penalty where persons are endangered. Whoever is guilty of being a party concerned in a riot or unlawful assembly endangering the life, limb, health or liberty of any person, or in any other riot or unlawful assembly, not of the description designated in section 11578, shall be punished by a fine not exceeding one thousand dollars or by imprisonment at hard labor for not more than twenty years."

section is quoted in the margin.[3]   Sections 11581, 11582, 11583 and 11584 are directed to the dispersion of riots and unlawful assemblies.   Section 11581 imposes the duty upon magistrates and certain police officers to disperse unlawful assemblies and riots and confers upon them the power to command the assistance of bystanders to seize and arrest the offenders.   This section is quoted in the margin.[4]   Section 11582 confers upon any two of the officers named the power to call to their aid a *posse comitatus*.   Section 11583 imposes obedience by the *posse comitatus* to the orders of any two of the police officers while en route to the place of unlawful assembly or riot and, after they arrive, to such orders as may be given by any two of the magistrates or such officers.   Section 11584 grants immunity from criminal prosecution to magistrates and officers and to all persons acting under their direction where their efforts to disperse and arrest offenders result in injury to the latter or to persons present as spectators or otherwise and makes the offenders and all persons present who have refused to assist in quelling the unlawful

---

3 "Sec. 11580.   Riot, unlawful assembly.   If upon the trial of any person for being concerned in a riot or unlawful assembly as described in section 11579, the jury shall not be satisfied that such person is guilty thereof, but shall be satisfied that he is guilty of any offense mentioned in section 11578, then the jury may return as their verdict that he is not guilty of the offense charged, but is guilty of such offense, and he may be punished accordingly."

4 "Sec. 11581.   By officers.   In case of any riot or unlawful assembly in any town, village or district, it shall be the duty of every district magistrate there resident, and also of the high sheriff, sheriff, and his deputies, and of the chief of police for the town, village or district to go among the persons so assembled, or as near to them as may be with safety, and in the name of the Territory to command all the persons so assembled immediately and peaceably to disperse; and if the persons shall not thereupon so disperse, it shall be the duty of each of the officers to command the assistance of all persons present, in seizing, arresting and securing in custody the persons so unlawfully assembled, so that they may be proceeded with for their offense according to law."

assembly or riot answerable for death or injury occasioned such magistrates or officers.

If, as urged by appellants under their special grounds of demurrer, the statutes of Hawaii defining unlawful assembly and riot are unconstitutional or contravene substantive rights guaranteed by controlling laws of the Congress of the United States, these statutes would be void and unenforceable and any indictment predicated thereon would be of no legal force or effect. Hence, we consider it our first and primary duty to dispose of these special grounds of demurrer. This we do in the order advanced.

1. We fail to see wherein or how the statutory prohibition against riot, either in itself or as applied to these appellants, abridges the rights of freedom of speech or peaceable assembly guaranteed by the First Amendment to the Constitution of the United States. Neither unlawful assembly nor riot, as defined by our law, has any relation to freedom of speech or to peaceable assembly. The offenses defined are the very antitheses of those rights. Speech occasioned by disturbance, tumult and violence, which accompanies an act or the actual beginning of an act striking terror or tending to strike terror into others, transcends free speech and peaceable assembly. The danger of substantive evils arising from unlawful assemblies and riots is clear and ever present. To its removal the right of free speech and assembly must yield its modicum of penal sanctions.[5] Unlawful assemblies and riots are no more immune from prohibition than the offenses of disturbing the peace and quiet of night,[6] using vulgar, profane

[5] Whitney v. California, 274 U. S. 357; DeJonge v. Oregon, 299 U. S. 353; Thornhill v. Alabama, 310 U. S. 88; Perkins v. Lukens Steel Co., 310 U. S. 113.

[6] R. L. H. 1945, § 11112.

or obscene language,[7] libel,[8] or slander of trust company.[9] Peaceable and not riotous assembly is protected. The following language of the United States Supreme Court is not inapt: "It is a fundamental principle, long established, that the freedom of speech and of the press which is secured by the Constitution, does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and prevents the punishment of those who abuse this freedom. * * *

"That a State in the exercise of its police power may punish those who abuse this freedom by utterances inimical to the public welfare, tending to corrupt public morals, incite to crime, or disturb the public peace, is not open to question."[10]

2. Nor are we able to appreciate the claim of vagueness or indefiniteness of the statutes defining riot or unlawful assembly or the alleged ambiguity in their application to the appellants. The criticism leveled at the statutes is purely abstract. The words "disturbance," "tumult," "violence" and the phrase "striking terror or tending to strike terror" possess meanings both inherent and historical. They are the same terms that characterize the offense of unlawful assembly and riot at common law.[11] The statutory definitions employ the same words of de-

---

7 R. L. H. 1945, § 11540.

8 R. L. H. 1945, § 11450.

9 R. L. H. 1945, § 11462.

10 Gitlow v. New York, 268 U. S. 652, 666; Whitney v. California, supra, note 5; DeJonge v. Oregon, supra, note 5; Drivers Union v. Meadowmoor Co., 312 U. S. 287, 293.

11 2 Jones' Blackstone § 160, p. 2330; 1 Russell, Crimes (9th ed.) p. 378; 3 Greenleaf, Evidence (16th ed.) § 216; Salem Mfg. Co. v. First American Fire Ins. Co., 111 F. (2d) 797; Walter v. Northern Ins. Co. of N. Y., 370 Ill. 283, 18 N. E. (2d) 906.

scription as those employed at common law. The terms "menacing language," "gestures," "show of weapons," "other signs or demonstrations tending to strike terror into others" which, under the provisions of section 11572, are declared to be sufficient violence to characterize an unlawful assembly or riot, are used in their ordinarily accepted sense and no difficulty is encountered in their application to the terms employed in defining the offenses. The legal effect of sections 11576 and 11577 is not involved upon this demurrer. Whether valid or invalid, as claimed by appellants, they do not affect the construction of the statutes defining unlawful assembly or riot. In our opinion, the statutes of Hawaii defining unlawful assembly and riot are sufficiently explicit in their description of the acts and conduct forbidden to prescribe the elements of the offenses with reasonable certainty to fix an ascertainable standard of guilt and make known to those to whom they are addressed what conduct on their part will render them liable for their penalties.[12]

The applicability of the statutes to the defendants is considered under the next succeeding head.

3. Similarly, the claim of appellants that the unlawful assembly and riot statutes of the Territory, in themselves and as applied to appellants, contravene substantive rights given to all persons particularly in labor disputes by section 1 of the Clayton Act,[13] and section 20 of that Act as amended by the Norris-LaGuardia Act,[14] in that it deprives persons in the Territory participating in labor disputes of the rights guaranteed by the Acts referred to, of (1) the right to do in concert what can be done singly, that is, picketing, either in small or large numbers and

---

12 Connally v. General Const. Co., 269 U. S. 385.

13 38 Stat. p. 738, c. 323.

14 47 Stat. p. 70, c. 90.

634

(2) the right not to be held accountable for unlawful acts of other persons.

The plea filed by the appellants to the indictment is entitled "Demurrer or Motion to Quash." It does not contain any allegations of fact and the objections raised thereby are directed exclusively to the indictment itself. It is, in legal effect, a demurrer and the general rule applies that "a demurrer will only be allowed for defects which appear on the face of the pleadings to which it is opposed; and therefore a demurrer which is founded on matter collateral to the pleading against which it is directed is 'a speaking demurrer,' and as such should be overruled."[15] The only allegations of the indictment that admit of the inference that the case involved or grew out of any labor dispute are the allegations contained in the third count thereof in respect to the purpose of the disturbance, tumult and violence and menacing language and hostile signs and demonstrations alleged and the resulting unlawful deprivation of rights and the endangerment of the liberty of the persons against whom the same were directed. The lower court held that this was insufficient to admit of the inference that the case involved or grew out of a labor dispute as defined in the Norris-LaGuardia Act and refused to consider the objections advanced based upon that premise. We do not deem it necessary, however, to review the finding of the trial court in that regard. Everybody knows, including this court, that in October of last year there was a territorial-wide sugar strike and that the employees of all the sugar plantations in the islands, including those of the Maui Agricultural Company, Limited, picketed and sought to prevent, and did prevent, fellow employees from working. It requires no stretch of the imagination to infer that that was

---

15 Arthur v. State, 146 Ga. 827, 92 S. E. 637.

the situation at Paia on the island of Maui and that the acts alleged in the third count of the indictment had reference to the strike prevailing at the plantation of the Maui Agricultural Company. But more cogent reasons counsel the disposition of this ground of demurrer. The indictment in this case was found on October 30, 1946, and a year has expired since it was returned. The demurrer or motion to quash has been pending since December 21 of last year and it is high time that all of the questions raised therein were disposed of. More often than not the grounds of demurrer are exploratory and not vital. It is a far cry from the decision of the United States Circuit Court to the Southern District of Iowa (139 Fed. 582 [1905]), holding that "There is and can be no such thing as peaceful picketing * * *" to the case of *Drivers Union* v. *Meadowmoor* (312 U. S. 287 [1941]), holding that peaceful picketing does not possess the taint of force "* * * from a trivial rough incident or a moment of animal exuberance * * *." Confusion has not been entirely eliminated. The Clayton and Norris-LaGuardia Acts have not proved panaceas and it was within the legitimate realm of appellants' defense for them to raise the question of what conflict, if any, existed between peaceful picketing, as recognized by the Norris-LaGuardia Act, and as construed by the federal courts, and the provisions of the unlawful assembly and riot statutes of Hawaii. Under the circumstances, we believe that justice would be best subserved by refusing to take refuge in the rule of pleading against "speaking demurrers" and deciding the question.

Assuming *arguendo* that by sections 1 and 20 of the Clayton Act, as amended by the Norris-LaGuardia Act, and particularly by section 4 of the latter Act, substantive rights were accorded persons participating or interested in labor disputes immunizing them from restraint by in-

junction or subsequent prosecution under any law of the United States, including the right of peaceful picketing, and that the Clayton and Norris-LaGuardia Acts are applicable to and controlling in Hawaii, it does not follow that the unlawful assembly and riot statutes of the Territory, as applied to appellants or as applied to participants in the Territory in any labor dispute nullify and destroy the substance of the right to picket. No conflict is discernible between the right accorded participants in labor disputes by the Clayton and Norris-LaGuardia Acts to picket and the provisions of the statutes condemning unlawful assembly and riot. On the contrary, picketing when lawfully exercised, does not come within the definition of riot or unlawful assembly as defined by statute. To say that the unlawful assembly and riot statutes nullify and destroy the substance of the right to picket is tantamount to saying that picketing may with impunity be unlawful to the extent defined by section 11570 and the participants may, with equal impunity, join in doing or actually beginning to do an act with tumult and violence and striking or tending to strike terror into others. The right asserted is peaceful picketing and not riot as defined by section 11571. The terms "peaceful means," "peacefully * * * communicating information," "peacefully persuading any person to work or to abstain from working," "recommending, advising or persuading others, by peaceful and lawful means," "peaceably assembling in a lawful manner" employed in section 20 of the Clayton Act, and the terms "giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence," "assembling peaceably to act or to organize to act * * *," "advising, urging, or otherwise causing or inducing without fraud or violence the acts

heretofore specified * * *" as employed in section 4 of the Norris-LaGuardia Act, inhibit the disturbance, tumult and violence striking terror or tending to strike terror into others which characterize the crimes of unlawful assembly and riot.

Nor do we understand that, as contended by appellants, the unlawful assembly and riot statutes of Hawaii make penal the mere presence at an assembly or are at variance with section 6 of the Norris-LaGuardia Act. Appellants argue that since there is a common purpose in picketing, the unlawful act of one or more individuals can convert the picket assembly into an unlawful assembly and hence the right not to be held accountable for such unlawful acts is invaded by the riot and unlawful assembly statutes. But this is not so. An analysis of the hypothesis suggested and the law applicable demonstrate its fallacy. The right to peaceful picketing is unquestioned. If an assembly has for its purpose peaceful picketing but lawlessness occurs not amounting to unlawful assembly as defined by section 11570, accountability therefor depends on whether the person merely present aided, incited, encouraged or countenanced those guilty of lawlessness. If so, he is deemed a principal therein.[16] If these elements are not present, he is not accountable for the unlawful acts of others. If the lawlessness assumes the proportions of an unlawful assembly or riot, accountability therefor by a person merely present depends upon whether that person promoted the same or aided, abetted, encouraged or countenanced the parties concerned therein by words, signs, acts or otherwise. If so, he is deemed a principal.[17] If not, he is not accountable for the riotous acts of others. The protection of a picket against the lawlessness of other

---

[16] R. L. H. 1945, § 10670.
[17] R. L. H. 1945, § 11575.

638

pickets in the same assembly is complete. The legal effect of section 11576, providing that in case of an unlawful assembly, being by proclamation or otherwise ordered to disperse by anyone having legal authority to disperse the same, anyone voluntarily remaining in the assembly after notice of the order, except for keeping the peace, is made a party concerned in the unlawful assembly, has not been advanced as contributing to the invasion of the right of non-accountability and we venture no comment thereon.

We shall now proceed to the consideration of the general ground of demurrer.

Riot was a compound offense at common law[18] and is made so by statute in Hawaii.[19]  There must not only be a riotous act done or actually begun to be done but also an unlawful assembly.

From the briefs it may be assumed that both parties are in agreement that under the provisions of sections 11570 and 11571 the following elements are included in the essential ingredients of the crime of riot: (1) the participation by at least three persons; (2) their presence of their own authority; (3) their assembly with disturbance, tumult and violence; (4) disturbance, tumult and violence to a degree striking or tending to strike terror into others; (5) a common intent to do an act with tumult and violence; and (6) the joint doing or actually beginning to do an act with tumult and violence of a degree and with the effect upon others similarly as in unlawful assembly.  They differ only upon the legal effect of the provisions of section 11581 in respect to an order of dispersal and the provisions of sections 11578 and 11579 in respect to the distinguishing elements of the crime of

18 Reg. v. Gulston, 2 Ld. Raym. 1210, 92 Eng. Rep. R. 298; Reg. v. Soley, et al., 2 Salk. 593, 91 Eng. Rep. R. 503.

19 R. L. H. 1945, § 11571.

riot, the appellants contending that under the provisions of section 11581 an order to disperse and refusal to do so are essential elements of the offense and must be alleged and that under the provisions of sections 11578 and 11579 the object of a riot and the rights endangered or the absence of both these elements are essential ingredients of the crime of riot and must be alleged.

We entertain no hesitancy in declaring that riot is nonetheless an offense under the statute, though no order to disperse, by proclamation or otherwise, has been given or made. Implicit in the provisions of section 11581 is the existence of an unlawful assembly or riot giving rise to the duty of the officers therein authorized to command immediate and peaceable dispersion. This is indicated by the purpose for which the duty was created, the imposition of the additional duty to command assistance, the liability of the offenders to arrest and the purpose of arrest and detention. Unless the offense were complete no authority could be conferred upon the officers named to perform the duties imposed.

The legal effect of the provisions of sections 11578 and 11579 in respect to the distinguishing elements of the crime of riot is no less clear. Section 11578 imposes a penalty of imprisonment at hard labor not more than two years or by fine not exceeding five hundred dollars upon conviction of riot having for its object the destruction or injury of any house, building, bridge, wharf or other erection or structure, or the destruction of any ship or vessel or the furniture, apparel or cargo thereof. Section 11579 imposes a penalty of fine not exceeding one thousand dollars or imprisonment at hard labor for not more than twenty years upon conviction of riot endangering the life, limb, health or liberty of any person. These distinctions did not obtain at common law. Section 11579 also imposes

the same punishment of a fine not exceeding one thousand dollars or by imprisonment at hard labor for not more than twenty years for riot not possessing the concomitants of endangerment in the manner described in section 11579 nor of the description designated in section 11578.

It is the general principle of criminal pleading that where, by statute or statutes, there is a gradation of offenses of the same species it is not necessary to negative the aggravating circumstances upon which the severer penalties depend.[20] And were this a case where to the statutory crime of riot a penalty is attached and by the same or other statutes the offense is gradated and made punishable with greater severity where the riot has for its object the injury or destruction of property such as defined in section 11578 or the endangerment of personal rights described in section 11579, in the absence of allegations of aggravation the indictment would be sufficient to sustain a judgment of conviction for the offense of simple riot.[21] But that is not this case. Under sections 11570, 11571, 11578 and 11579 there is no gradation of the offense of riot. On the contrary three categories of riot are created accordingly as the object of the riot is the injury or destruction of property enumerated in section 11578, · the endangerment of personal private rights enumerated in section 11579 or a riot containing none of the ·concomitants of section 11578 or 11579. And peculiar to observe, where the riot is not accompanied by any of the distinguishing features described in section 11578 or 11579, the penalty is the same as when the riot endangers the personal private rights described in section 11579.

Moreover, indicative of the legal effect of sections 11578 and 11579 are the provisions of section 11580, where it is

---

20 Larned & another v. The Commonwealth, 53 Mass. 240.
21 Larned & another v. The Commonwealth, supra.

provided that if upon the trial of any person for being concerned in a riot or unlawful assembly, as described in section 11579, the jury shall not be satisfied that he is guilty thereof but shall be satisfied that he is guilty of any offense mentioned in section 11578, then the jury may return as their verdict that he is not guilty of the offense charged but is guilty of such offense and he may be punished accordingly. Even though the validity of section 11580 might be questionable, it nevertheless reflects the legislative intention that the distinguishing elements of the crime of riot be alleged.

Confirmation may also be found for our conclusion in the guaranty of the Sixth Amendment to the Constitution requiring that in criminal prosecutions the accused shall be informed of the nature and cause of the accusation. Irrespective of the penalty to which the accused may be liable, he is entitled to be informed of the presence or absence of the distinguishing features of the offenses described in sections 11578 and 11579. Especially is this so where, as here, the offense is a felony and, if within the provisions of section 11579, is punishable by imprisonment at hard labor for as long as twenty years. Neither the first nor second count of the indictment contains allegations categorizing the riot charged within the descriptive words of sections 11578 or 11579 and in the absence of such allegations these counts are fatally defective.

Count three of the indictment, however, differently from counts one and two, does contain allegations categorizing the riot charged therein within the descriptive words of section 11579 in respect to riots endangering liberty. It alleges that the persons in whom the conduct of the defendants struck or tended to strike terror included certain employees of the Maui Agricultural Company, Limited, a corporation, "to prevent said employees

from entering the premises of said corporation for the purpose of proceeding to the place of and engaging in their employment, thereby unlawfully depriving said [persons] of their rights and endangering [their] liberty * * *." If the word "liberty" as employed in section 11579 includes the right of an employee to proceed to the place of and engage in his employment as, in our opinion, there can be no doubt that it does, to deprive an employee of that right endangers his liberty and the direct averment in the indictment that the appellants endangered their liberty is consistent with the allegations of such deprivation.

But all three counts of the indictment are, in our opinion, fatally defective in failing to specify the particulars of the "assaulting, shoving and pushing" alleged in counts one and two and of the "conduct" alleged in count three which, accompanied by disturbance, tumult and violence, struck or tended to strike terror into others. Acts which strike or tend to strike terror into others are essential ingredients of the offense of riot. In order to constitute the offense there must be a doing or the actual beginning to do an act. The assaulting, shoving and pushing alleged in counts one and two may have been directed by the defendants against each other. The assaults may have been merely technical assaults. For all that appears, the acts alleged constitute a simple affray. The allegations of "assaulting, shoving and pushing" are absent from count three. It merely alleges unlawful "conduct" striking or intending to strike terror into others, specified as "disturbance, tumult and violence and menacing language and hostile signs and demonstrations." This is not enough. Nothing material is to be taken by way of intendment and were the rule applied that a pleading is to be taken most strongly against the pleader the absence of description of the conduct complained of excludes riotous acts. The

court, upon demurrer or motion to quash, should be in a position to say from all the allegations of the indictment whether as a matter of law the facts alleged constitute the crime sought to be charged or any crime. An indictment for riot from which is absent a description of the acts done or actually begun to be done in furtherance of the unlawful assembly is insufficient to characterize such acts as riotous as a matter of law and is fatally defective.[22] Nothing we have said in this regard, however, is to be taken as applicable upon general demurrer to the lack of specification of the particulars of the disturbance, tumult and violence, menacing language, gestures and other hostile signs and demonstrations alleged in the three counts of the indictment. Specifications have been held to be unnecessary.[23] The use of these statutory terms, without descending to particulars, seems to have been the accepted method of describing the crime of riot.[24] And the local statutes designed to simplify the forms of indictments[25] certainly do not make necessary what, under the formalism and prolixity of common-law criminal pleading was deemed unnecessary. An indictment for riot is sufficient in this jurisdiction which omits specifications of the particulars of the disturbance, tumult and violence, menacing language, gestures and other hostile signs and demonstrations as those words and terms are employed in the stat-

[22] State v. Russell, 45 N. H. 83; Reg. v. Soley, et al., supra, note 18; The People v. Carbine, 185 Ill. App. 160; Green v. The State, 109 Ga. 536, 35 S. E. 97.

[23] Dougherty et al. v. The People, 4 Scam. (Ill.) 179; The State v. Voshall and Others, 4 Ind. 589; Commonwealth v. Frishman, 235 Mass. 449, 126 N. E. 838.

[24] Wharton, Prec. of Indicts. & Pleas, form 846; 2 Archbold's Crim. Prac. & Pl., [* 588]; Train & Heard, Prec. of Indicts., p. 456; 3 Bishop, New Crim. Proc. § 588.

[25] R. L. H. 1945, §§ 10802, 10809, 10810.

utes and despite such omissions is sufficient to satisfy the guarantees of the Sixth Amendment.[26]

Finding, as we do, that the indictment and each and every count thereof are fatally defective for the reasons assigned and that the general ground of demurrer thereto is well taken, consideration of the additional reasons advanced in support of the same ground becomes unnecessary.

Consistently with the views herein expressed, appellants' exception to the overruling of the demurrer upon the general ground included therein is hereby sustained.

*H. Bouslog* (also on the briefs) for appellants.

*W. F. Crockett*, Deputy County Attorney, Maui County (*E. R. Bevins*, County Attorney, with him on the briefs), for the Territory.

---

[26] State v. Soloman, 93 Utah 70, 71 P. (2d) 194.