Dianne FEELEY, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Albert UHRIE, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Bryan DUNLAP, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 3863, 3864, 3869–3872.

District of Columbia Court of Appeals.

Argued April 4, 1966.

Decided June 17, 1966.

Marilyn Cohen, Washington, D. C., for appellant Dianne Feeley.

David C. Niblack, Washington, D. C., with whom Arthur J. Whalen, Jr., Washington, D. C., was on the brief, for appellants Albert Uhrie and Bryan Dunlap.

David P. Sutton, Asst. Corp. Counsel, with whom Milton D. Korman, Acting Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellants were convicted of disorderly conduct after a trial by the court, sitting without a jury, and were each sentenced to ninety days in jail.

There is little, if any, dispute as to the facts. On August 9, 1965, a group of more than 250 demonstrators, of which appellants were members, paraded from the Washington Monument through the Mall to Third Street, N.W., pursuant to a permit issued by the United States Park Service. At Third Street, the demonstrators

were informed by Inspector Powell of the Capitol Police that they were approaching the Capitol Grounds and that it would be a violation to assemble and parade on said grounds. They resumed marching, and at First Street the inspector reiterated his warning. The group continued up First Street, entered the north walkway, and was stopped on the Capitol Grounds. Deputy Chief Covell of the Metropolitan Police Department then advised the demonstrators that they were .violating the law by incommoding the walkway and would have to leave within five minutes. At about this time, the group sat down. For a half-hour they engaged in clapping, singing, chanting, speechmaking, and occasional hollering, and at the end of this period they were again advised by the police that they were violating the law and would have to move on or suffer arrest. Uncontradicted testimony further showed that they were completely blocking the walkway and that there were quite a few sightseers and visitors in the area trying to visit the Capitol. Shortly after this last announcement was made, appellants were arrested.

We are presented with the threshold question of whether the government waived its right to prosecute under D.C. Code Section 22–1107 and relied solely on Section 22–1121, but we find it unnecessary to determine it because we believe the convictions can be sustained under Section 22–1121. That section, in pertinent part, reads as follows:

"Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby — * * * (2) congregates with others on a public street and refuses to move on when ordered by the police; * * * shall be fined not more than $250 or imprisoned not more than ninety days, or both."

█ Appellants argue that their convictions are not based on any evidence of guilt or in the alternative that there was insufficient evidence to establish guilt. We are unable to agree. There is no dispute that appellants were ordered by the police to move on and refused to do so, and while it is true that no proof of an actual or impending breach of the peace was presented to the court, we have in the past held that under certain circumstances no such proof is required. Scott v. District of Columbia, D.C.Mun.App., 184 A.2d 849 (1962).

Here the facts show that a group of 250 demonstrators exceeded the authorization of their parade permit, disregarded the cautions of the police at Third Street and again at First Street, willfully violated the Capitol Grounds statute,[1] blocked a public walkway, refused to move on when validly ordered to do so by the police, and engaged in loud and boisterous conduct. It is possible that the police, seeing such a group provoking arrest, may have believed that violence would occur when such arrests were effected. The trial court could have found that these were circumstances such that a breach of the peace may have been occasioned thereby, and therefore there was sufficient evidence to support the convictions.

█ It is contended, however, that Section 22–1121 is unconstitutionally vague, and that both on its face and as applied, it impinges upon the exercise of free speech, free assembly, and the right to petition the government for redress of grievances. Our analysis need not be concerned with the literal wording of the statute since it has previously been construed in Scott v. District of Columbia, supra, as follows:

" * * * The statute as worded does not represent a threat to freedom of speech, religion or assembly. It does no more than give the police the right, within reasonable limitations, to keep the public sidewalks free of unnecessary ob-

1. Code 1961, § 9–118 et seq. [40 U.S.C.A. § 193a et seq.]

structions and prevent groups from congregating in such a way that a breach of peace may result. * * *" (184 A.2d at 852.)

We reaffirm our opinion that as thus construed, the statute is not unconstitutional.

Turning to the specific application of Section 22–1121 to these appellants, we find one factor present which distinguishes our case from other cases decided under similar statutes. Here the demonstrators were at a place where they had no right to be;[2] whereas in other cases, the demonstrators were in permitted areas. In Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), the testimony showed that the group was given permission to demonstrate across the street from the courthouse. In Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), the demonstrators had the right to be on the State House grounds. In Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), the alleged misconduct occurred on a sidewalk outside a department store, and in Brown v. State of Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), the locus of events was a public library. See also Henry v. City of Rock Hill, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964).

The Capitol Grounds statute has for its obvious purposes the noninterference with the work of the legislature, the maintenance of free and undisturbed movement of tourists and visitors into and around the seat of our nation's government, and the protection of the landscape. It is clear and nondiscriminatory on its face and prohibits any and all groups from parading or assembling in a certain defined area. As such, we feel it is a permissible exercise of congressional power.

It must be remembered in this regard that the rights of freedom of speech, assembly, and petitioning the government are not absolute, and one may not attempt to exercise them in any public place and at any time. Cox v. State of Louisiana, supra; Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 589, 84 L.Ed. 987 (1940). The balance between public well-being and individual rights and privileges must be struck by the courts when the constitutionality of a statute is questioned. The language of the Supreme Court in Cox is particularly appropriate here.

" * * * The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist

---

2. Code 1961, § 9–124 [40 U.S.C.A. § 193g] provides: "It is forbidden to parade, stand, or move in processions or assemblages in said United States Capitol Grounds, or to display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement * * *."

upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. [Citations omitted.]" (379 U.S. at 554–555, 85 S.Ct. at 464.)

In the light of the above, we hold that Section 22–1121(2) as construed and applied is not unconstitutional, and that there was sufficient evidence to support the convictions below.

While this disposes of the central issues involved herein, certain contentions of appellants require comment.

It is claimed that since Code Section 11–963 (Supp. V, 1966) states that the Court of General Sessions shall have jurisdiction of offenses for which the punishment is by fine only or imprisonment for one year or less, any offense which may be punished by a fine *and* imprisonment is outside the jurisdictional limits of that court. We have made a search of all pertinent legislation since the original Police Court was formed, and find this argument without merit.

In 1870 the Police Court had exclusive jurisdiction of all crimes "not deemed capital or otherwise infamous crimes, that is to say, of all simple assaults and batteries, and all other misdemeanors not punishable by imprisonment in the penitentiary [i. e., more than one year] * * *." 16 Stat. 153, ch. cxxxiii (1870). Historically, felonies were those crimes punishable by imprisonment for more than one year, while all others were classified as misdemeanors. This dichotomy, which has been the foundation of jurisdiction of the District of Columbia courts, exists today.[3]

The United States Court of Appeals has recently had an opportunity to review the basic statutes of the District in Tate v. United States, D.C.Cir., 359 F.2d 245 (1966), in which the defendant had pleaded guilty in the Court of General Sessions to crimes punishable by fine and/or imprisonment for less than one year. Although the Court of Appeals was not concerned with the issue before us, its analysis and language are pertinent. "There is concurrent criminal jurisdiction in the District of Columbia in cases other than felonies." The court further stated that criminal proceedings prosecuted by the United States were "not petty offenses, but serious crimes, though classified as misdemeanors."

We find, therefore, that by statute and court analysis, the felony-misdemeanor dichotomy has remained alive, and hold that the jurisdiction of the Court of General Sessions extends to all misdemeanors, that is, to all crimes where the maximum length of incarceration is one year, regardless of whether or not a fine is simultaneously imposed.[4]

In a related argument, it is contended that the Office of the Corporation Counsel lacked "jurisdiction" to prosecute the offenses charged. While both United States v. Strothers and District of Columbia v. Moody, supra note 4, held that under Section 23–101 prosecution of offenses punishable by fine and imprisonment must be conducted by the United States Attorney, we hold that Section 22–109 specifically excepts prosecutions under Section 22–1121 from the operation of this rule.[5] This is true not only because the

3. 18 U.S.C.A. § 1 provides: "Notwithstanding any Act of Congress to the contrary: (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony. (2) Any other offense is a misdemeanor. * * *"

4. We are aware that the cases of United States v. Strothers, 97 U.S.App.D.C. 63, 228 F.2d 34 (1955), and District of Columbia v. Moody, 113 U.S.App.D.C. 67,

304 F.2d 943 (1962), have interpreted a similar statute dealing with the question of who shall be the party plaintiff in criminal prosecutions in the District; however, we do not feel bound by that analysis in this case because of the difference in statutory language and history.

5. Section 22–109 provides: "All prosecutions for violations of section 22–1121

two sections must be read together, but because Section 22–109 was amended in 1953 by the addition of reference to Section 22–1121 in two places, "so as to provide that violations of the new section 211 [22–1121] shall be prosecuted in the name of the District of Columbia * * *." H.R.Rep.No.514, 83d Cong., 1st Sess. (1953).

 Finally, it is argued that the sentences of ninety days' imprisonment were illegal and that Code Section 22–3111 is controlling here. That section states:

"Any person guilty of disorderly and unlawful conduct in or about the public buildings and public grounds belonging to the United States within the District of Columbia * * * shall, upon conviction thereof, be fined not more than fifty dollars."

On the other hand, Section 22–1121 permits a fine of $250 or imprisonment for ninety days, or both.

We are convinced that these two sections are not incompatible, and an analysis of still a third section makes this clear. Section 9–125 [6] provides that convictions under Sections 9–119 to 9–124 (parading and other offenses on Capitol Grounds) shall be punishable by a fine not exceeding $100, or imprisonment for not more than sixty days, or both, and Congress intended that this section not be construed to alter, amend or supersede Section 22–3111. See § 16(b) of Act of July 31, 1946, 60 Stat. 718. By reading all three sections together, a clear legislative pattern is discernible. Disorderly conduct within the District shall be punished under Section 22–1121, except when said conduct takes place in or about the public buildings and public grounds belonging to the United States. In those cases, Section 22–3111 shall apply, except that certain specific offenses

may be prosecuted and punished under Section 9–125.

Thus, although the government may have had a choice as to which statute it would proceed under, it was bound by that choice when the matter of sentencing was reached. Since the prosecutions were brought under the general disorderly sections rather than the Capitol Grounds statute, it follows that appellants should have been sentenced under Section 22–3111.

The convictions are affirmed and the cases remanded to the trial court for resentencing under Section 22–3111.

Remanded.

---

* * * shall be conducted in the name of and for the benefit of the District of Columbia, and in the same manner as provided by law for the prosecution of

offenses against the laws and ordinances of the said District. * * *"

6. 40 U.S.C.A. § 193h.