443 P.2d 443

Mark SHENFIELD, Petitioner,

v.

CITY COURT OF the CITY OF TUCSON, PIMA COUNTY, State of Arizona, and the Honorable Magistrate Hyman Copins, Respondents.

No. 2 CA–CIV 542.

Court of Appeals of Arizona.
July 5, 1968.

Lillian S. Fisher, Tucson, for petitioner.

Dino De Concini, City Atty., City of Tucson, Joseph A. Lovallo, Asst. City Atty., for respondents.

MOLLOY, Judge.

These certiorari proceedings were instituted in this court by the petitioner, against whom a criminal prosecution for violation of our unlawful assembly statute, A.R.S. § 13–633 is pending in city court, for purposes of challenging the constitutionality of the statute. The constitutional challenge was presented to the lower court by a mo-

tion to quash the complaint and an additional motion to quash was filed on the grounds that the complaint failed to charge an offense under A.R.S. § 13–633. A hearing was duly held and the motion to quash was denied. Reversal of this ruling is sought here.

The respondent, in opposition to the petition for certiorari, challenged neither the propriety of our intervention by extraordinary writ nor our jurisdiction to do so, but rather directed itself to answering the attack on constitutionality. In view of the fact that the question presented by the petitioner likewise affected sixteen other pending criminal prosecutions in city court, we deemed it not inappropriate to exercise our discretionary power to grant extraordinary relief and issued a writ of certiorari. As pointed out in Caruso v. Superior Court in and for County of Pima, 100 Ariz. 167, 412 P.2d 463 (1966):

> "It is clear that the propriety of granting the writ depends upon the facts of each case. The guiding principle must be our obligation to see that essential justice is done."

100 Ariz. 172, 412 P.2d 466.

Notwithstanding the parties' failure to raise the question of jurisdiction, the appellate courts of this state, *ex mero motu,* have consistently raised the question of their power to entertain the matter before them. See, e.g., Arizona Podiatry Ass'n v. Director of Insurance, 101 Ariz. 544, 422 P.2d 108 (1966); Rueda v. Galvez, 94 Ariz. 131, 382 P.2d 239 (1963); Searles v. Haldiman, 3 Ariz.App. 294, 413 P.2d 860 (1966); Ginn v. Superior Court in and for County of Pima, 1 Ariz.App. 455, 404 P.2d 721 (1965).

■ Therefore, a prerequisite to our consideration of the ruling complained of is a determination of whether this court has jurisdiction to issue an extraordinary writ directed to a court not of record, from which court an appeal does not lie to this court. That the problem merits serious consideration is established by the fact that this court, Division One, has expressed itself as of the opinion that special writ jurisdiction is strictly limited by the extent of appellate jurisdiction. Crouch v. Witten, Justice of the Peace, 7 Ariz.App. 460, 440 P.2d 1000 (1968). It is implicit in the *Crouch* decision that this court, Division Two, acted without jurisdiction in Abbey v. City Court, 7 Ariz.App. 330, 439 P.2d 302 (1968), by issuing a writ of prohibition to the same city court as to which the instant writ of certiorari is addressed. In *Abbey,* there was no discussion of the jurisdictional problem, and as the views expressed therein, in our opinion, control the final disposition of the instant writ as well, we examine the jurisdictional problem both from the standpoint of *Abbey* and the case at bar.

A.R.S. § 12–120.21 subsec. A, par. (4) confers jurisdiction upon this court " * * to issue injunctions, writs of mandamus, review, prohibition, habeas corpus, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction." A.R.S. § 12–120.21 subsec. A delineates our appellate jurisdiction:

> "Appellate jurisdiction in all actions and proceedings originating in or permitted by law to be appealed *from the superior court,* except criminal actions involving crimes punishable by death or life imprisonment."

(Emphasis ours.)

Some courts have taken the view that the issuance of extraordinary writs "in aid of appellate jurisdiction" is only concomitant with jurisdiction of an appeal. See, e.g., State ex rel. Buis v. Hendricks Superior Court, 246 2nd 1, 201 N.E.2d 697 (Ind. 1964); State Farm Mutual Automobile Ins. Co. v. Worley, 346 S.W.2d 407 (Tex. Civ.App.1961).

We believe the Supreme Court of our state has taken a more flexible view as to special writ usage, as we shall attempt to demonstrate by analysis of decisions of that Court subsequently in this opinion. But before doing so, it may be well to note that there is a difference between the instant case and the *Abbey* decision insofar

as potentiality of appeal is concerned. In the instant action, there is the potential of a direct appeal to this court, because the validity of a statute is challenged on constitutional grounds. See A.R.S. §§ 12–2101, subsec. B (as amended) and 22–375, subsec. A. The authority for our court to entertain such an appeal is derived from the Arizona Constitution, article 6, § 9, A.R.S., and A.R.S. § 12–120.21, subsec. A, (2).

But this same potentiality for direct appeal does not exist in *Abbey*, as no challenge was posed there to the validity of a statute. However, even in *Abbey*, there exists the potentiality for an indirect appeal by the special writ route. That there is such potentiality is indicated by the *Crouch* opinion itself, in which the court upheld its jurisdiction to review on appeal the denial by the superior court of a writ of prohibition to the justice court.

 *Crouch* is well supported by authority. A litigant in a court not of record may institute extraordinary writ proceedings in superior court to challenge the validity of an inferior tribunal's action. Ariz.Const. art. 6, § 14. A final judgment entered in such proceedings is an appealable order. Tsipai v. State of Arizona, 8 Ariz.App. 3, 442 P.2d 167 (1968). See also State Board of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P.2d 348 (1958); Dotseth v. Justice Court, Tucson, Precinct No. One, 5 Ariz.App. 424, 427 P.2d 558 (1967); Peterson v. Jacobson, 2 Ariz.App. 593, 411 P.2d 31 (1966); Crittenden v. Municipal Court, 216 Cal. App.2d 811, 31 Cal.Rptr. 280 (1963); Collette v. Matejcek, 146 N.W.2d 156 (N.D. 1966); Kennett v. Levine, 49 Wash.2d 605, 304 P.2d 682 (1956). Therefore, it cannot be said that an order of a justice court or magistrate's court is ipso facto

immune from review by this court. The petitioner, had he elected such avenue of relief, could have sought to challenge the ruling herein complained of in superior court proceedings. If relief were denied him there by an appropriate order, an appeal therefrom would lie to this court. A.R.S. § 12–120.21, subsec. A (2); A.R.S. § 12–2101, subsec. B, as amended.

In *Abbey*, the petition to this court indicated that a writ of prohibition had been sought and denied in the superior court before relief was sought here.[1] The potentiality of indirect appeal is thus apparent in that case, and the potentiality of direct appeal is clear in the instant action. Is this potentiality of appeal, direct or indirect, sufficient to support special writ jurisdiction? We believe that it is sufficient.[2]

Previous decisions of our Supreme Court give us some guidance in this direction. In Ralls v. Justice Court, 92 Ariz. 347, 377 P.2d 194 (1962), the Supreme Court of Arizona entertained a petition for an extraordinary writ as to a pending criminal prosecution in justice court, a matter as to which no appeal would lie to the higher court. In Erdman v. Superior Court of Maricopa County, 102 Ariz. 524, 433 P.2d 972 (1967), the Supreme Court, in vacating a decision of this court, denied a petition for prohibition requesting that the superior court be prohibited from proceeding with the trial in a cause appealed to that court from a conviction in the magistrate's court, without comment on the fact that no appeal would lie from a judgment rendered in such a case.

The appellate courts of this state have consistently adhered to the pronouncement of our Supreme Court in Goodman v. State, 96 Ariz. 139, 393 P.2d 148 (1964):

---

1. Rule 1(b) Rules of the Supreme Court, 17 A.R.S., requires that a petition for special writ contain a statement that relief has been sought in a lower court, if available, and if not, a statement of " * * * the circumstances which in the opinion of the applicant render it proper

that the writ should issue originally * * *." from the higher court.

2. A similar view is expressed by one law review writer. See Lesher, Extraordinary Writs in the Appellate Courts of Arizona, 7 Ariz.L.Rev. 34 (Fall 1965).

"We look to substance, not to form." 96 Ariz. 140, 393 P.2d 149.

We, therefore, decline to equate "appellate jurisdiction" with "direct appeal" for purposes of passing upon our jurisdiction to issue extraordinary writs. Where a matter is ultimately cognizable by this court, by direct appeal or otherwise, we believe our discretionary intervention by extraordinary writ proceedings may be proper if other requisites for the exercise of this jurisdiction are met.

We now address ourselves to the merits of this controversy, i. e., the constitutionality of A.R.S. § 13–633, which provides:

"Unlawful assembly; definition; punishment

"A. When two or more persons assemble together to do an unlawful act and separate without doing or advancing toward it, or do a lawful act in a violent, boisterous or tumultuous manner, such assembly is an unlawful assembly.

"B. A person who participates in an unlawful assembly is guilty of a misdemeanor.

The complaint filed in city court charged: "* * * that the above named defendant, MARK H. SHENFIELD, did on or about December 4, 1967, assemble together with two (2) or more persons in the vicinity of 110 S. Scott Ave. in the City of Tucson, County of Pima, State of Arizona, for purposes of participating in a lawful act which after it had been commenced did then become violent, boisterous or tumultuous in manner, and did thereby become an unlawful assembly all of which is contrary to the laws of the State of Arizona and the City of Tucson according to ARS 13–633."

The petitioner moved to quash the complaint on several grounds, one of which was that the aforesaid statute is vague and ambiguous, hence unconstitutional. He argues that it lacks the requisite definiteness that comports with due process and suffers from "overbreadth" in that it encompasses conduct which is both within and without the pale of First Amendment protection.

Courts have a duty, whenever possible, to construe a statute so as to render it constitutional. State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); State v. Locks, 91 Ariz. 394, 372 P.2d 724 (1962); State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968). Although the dividing line between what is lawful and unlawful cannot be left to conjecture, State v. Locks, 97 Ariz. 148, 150, 397 P.2d 949 (1964), statutes are not automatically invalidated as vague simply because there is difficulty in determining whether certain marginal offenses fall within their language. United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); State v. Cota, 99 Ariz. 233, 236, 408 P.2d 23 (1965).

It must be remembered that the rights of freedom of speech and assembly are not absolute and one may not attempt to exercise them in any public place and at any time. Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Feeley v. District of Columbia, 220 A.2d 325 (D.C.App.1966). As stated in *Cox*, supra:

"The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy."

85 S.Ct. at 464.

Our unlawful assembly statute was derived from its California counterpart, § 407, California Penal Code. In People v. Kerrick, 86 Cal.App. 542, 261 P. 756 (1927), the intent of the statute was described:

"The statute was intended to prevent 'any tumultuous disturbance of the public peace by' two or more persons 'having no avowed, ostensible legal or con-

stitutional object assembled under such circumstances and deporting themselves as to produce danger to the public peace and tranquillity, and which excites terror, alarm and consternation in the neighborhood.' [Citation omitted]"

261 P. at 760.

 A.R.S. § 13–633 refers by name to unlawful assembly, a common-law crime. It is therefore not inappropriate to look to the common-law definition to supply the requisite definitiveness to the statutory language. United States v. Turley, 141 F.Supp. 527 (1956); State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965); State v. Bowling, 5 Ariz.App. 436, 440, 427 P.2d 928 (1967); Gallegos v. People, 159 Colo. 379, 411 P.2d 956 (1966); State v. Taylor, 46 N.J. 316, 217 A.2d 1 (1966); Commonwealth v. Abney, 195 Pa.Super. 317, 171 A.2d 595 (1961); 91 C.J.S. Unlawful Assembly § 1, at 496.

A common-law definition from Wise on Riots and Unlawful Assembly (4th ed.) is quoted in Lair v. State, Okl.Cr., 316 P.2d 225, 71 A.L.R.2d 856 (1957), as follows:

"An unlawful assembly is an assembly of three or more persons who, with intent to carry out any common purpose, in such a manner, or so conduct themselves when assembled *as to cause persons in the neighborhood of such assembly to fear on reasonable grounds that the person so assembled will disturb the peace tumultously* or will, by such assembly, needlessly and without any reasonable occasion, provoke other persons to disturb the peace tumultously. Persons lawfully assembled together may become

an unlawful assembly if they conduct themselves with a common purpose, in such a manner as would have made their assembling unlawful if they had assembled in that manner for that purpose.". (Emphasis ours.)

For similar definitions, see Perkins on Criminal Law, ch. 5, § 2(C) (1); State v. Butterworth, 104 N.J.L. 579, 142 A. 57, 58 A.L.R. 744, at 748 (1928); and State v. Woolman, 84 Utah 23, 33 P.2d 640, 93 A.L.R. 723 (1934).

 We agree with the petitioner that not every meeting where violent, boisterous or tumultuous conduct occurs may be denominated an unlawful assembly. Such was not the intent of the statute. However, the use of the words "boisterous," "tumultuous," and "violent," without more, do not infect the statute with the constitutional infirmity of vagueness. See The State v. Kutter, 59 Ind. 572, 574 (1877); City of Madisonville v. Bishop, 113 Ky. 106, 67 S.W. 269, 270, 57 L.R.A. 130 (1902); and State v. Buddress, 63 Wash. 26, 114 P. 879, 881 (1911). These same terms characterize the offense of unlawful assembly and riot at common law. Walter v. Northern Ins. Co. of New York, 370 Ill. 283, 18 N.E.2d 906, 121 A.L.R. 244 (1938).

These words have such inherent and historical meaning as to give sufficient warning of the proscribed conduct, i. e., a gathering of two or more persons who conduct themselves in such a disorderly manner as to give persons in the neighborhood reasonable grounds to apprehend a breach of peace as a result thereof.[3]

---

3. The Supreme Court of Hawaii, in Territory v. Kaholokula, 37 Hawaii 625 (1947), held that their unlawful assembly statute had the requisite certainty to withstand a "vagueness" attack. Their statute defined unlawful assembly:
 "Where three or more persons are, of their own authority, assembled together with disturbance, tumult and violence, and striking terror or tending to strike terror into others, such meeting is an unlawful assembly. * * *"

We consider this decision of the highest state court of Hawaii to be persuasive, notwithstanding the fact that, in the case of International Longshoremen's & Ware. Union v. Ackerman, 82 F.Supp. 65 (1948, as amended 1949), the federal district court found the unlawful assembly statute of Hawaii to be unconstitutional because of vagueness and denial of freedom of speech and assembly. This district court decision was subsequently reversed on oth-

Accordingly, we hold that, by reference to the common-law definition of unlawful assembly, our unlawful assembly statute affords sufficient warning of the conduct proscribed to withstand petitioner's attack.

We do, however, find that the city court erred in denying the petitioner's motion to quash on the ground that the complaint failed to state an offense. We recently held in Abbey v. City Court, 7 Ariz.App. 330, 439 P.2d 302 (1968), that the verbiage of this complaint is fatally defective. Therefore, the motion to quash was erroneously denied and the order of denial is vacated.

HATHAWAY, C. J., and KRUCKER, J., concur.

er grounds by the Ninth Circuit Court of Appeals. 187 F.2d 860 (1951), cert. de-nied 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646 (1951).