556 P.2d 17

**Julia THOMPSON, Petitioner,**

**v.**

**Harry GIN, Judge of the Superior Court IN AND FOR the COUNTY OF PIMA, Respondent,**

**and**

**FAIRHAVEN INVESTMENTS, INC., dba Fairhaven Mobile Home Park, Real Party in Interest.**

**No. 2 CA–CIV 2344.**

Court of Appeals of Arizona, Division 2.

Oct. 25, 1976.

Sharp, Sando, Alfred & Hardy by David T. Hardy, Tucson, for petitioner.

Elmer W. Courtland, Tucson, for real party in interest.

HATHAWAY, Judge.

A judgment of the respondent court ordering restitution of a mobile home lot to the real party in interest is the subject of this special action. (This judgment was the result of an appeal from justice court in forcible detainer proceedings.) The respondent court specifically found that the Arizona Mobile Home Parks Resi-

dential Landlord and Tenant Act, A.R.S. Sec. 33–1401 et seq., was not applicable to a month-to-month tenancy entered into prior to the effective date of the act. Since the potentiality of appeal, direct or indirect, is sufficient to support our special action jurisdiction, *Shenfield v. City Court,* 8 Ariz.App. 81, 443 P.2d 443 (1968), and we believe our discretionary intervention is proper, we assume jurisdiction.

The legislature in enacting the Mobile Home Parks Residential Landlord and Tenant Act, provided that the Act did not apply to "[t]ransactions entered into before the effective date of this act, and not extended or renewed after that date . . . ." Laws 1975, Chapter 142, Sec. 2. The respondent court, in holding that the Act was not applicable, stated:

"There is substantial authority for the proposition that an oral month-to-month tenancy comes due and at the end of each month thereof is automatically renewed. There is also authority to the effect that an oral month-to-month tenancy is a continuous tenancy terminating upon giving the statutory notice for the termination of the same. The Court believes the latter view is sounder."

■ Our analysis of the cases which reflect this dichotomy of viewpoint leads us to conclude that the sounder view is that a tenancy from month-to-month is not a continuing right of possession but ends and recommences at the expiration of every month. See *The Hour Publishing Company v. Gorez,* 5 Conn.Cir. 419, 254 A.2d 919 (1968); *Allied Diamond Center, Inc. v. Safran,* Mun.Ct., 111 N.Y.S.2d 14 (1952); *Bachrach v. Estefan,* 184 S.W.2d 640 (Tex.Civ.App.1945); *Weiss v. City of South Bend,* 118 Ind.App. 105, 74 N.E.2d 925 (1947); *Zoby v. Kosmadakes,* 61 A.2d 618 (D.C.App.1948). Illustrative of the opposing viewpoint holding that a tenancy from month-to-month is a continuing one and not a renewal of reletting at the beginning of every month are *Janofsky v. Gar-land,* 42 Cal.App.2d 655, 109 P.2d 750 (1941); *H. E. Drum v. Pure Oil Company,* 184 So.2d 196 (Fla.App.1966); *Wagner v. Kepler,* 411 Ill. 368, 104 N.E.2d 231 (1952). We are not impressed with this latter line of cases since, unlike the cases adopting a contrary view, they do not concern the relationship of landlord and tenant inter se, but rather are concerned with liability for injuries occasioned by a defect in the rented premises.

It is pointed out in Powell on Real Property, Abridged Edition, Sec. 253, that estates from period to period include the arrangements under which a great many urban dwellers live. The author states:

"Persons in the lower income groups— even those in the lower middle-income groups—frequently do not occupy under written leases or have estates for years. They 'rent' a space in which to live, agreeing to pay so much every week or every month, out of the periodically received pay check or pay envelope. Duration of the occupancy is undiscussed. The tenant's ability to pay is so dependent on the unpredictable regularity of earnings, and his desire to remain is so dependent upon possible changes in his place of employment, that an agreement obligating him to an estate for years is not commonly made. From the lessor's angle, no useful end is likely to be served by a more definitive arrangement. Few of these tenants have assets sufficient to make a judgment collectible. The uncertainties of life which beset our mobile industrial and white-collar population are suited by the fluidity of arrangement implicit in this type of nonfreehold estate. Two results flow from the foregoing. This type of estate is tremendously important sociologically in that occupancy thereunder conditions the home life of a very substantial fraction of the population. On the other hand, the financial smallness of the involved rights results in a great dearth of reported decisions from the courts concerning

them. Their legal consequences are chiefly fixed in the 'over the counter' mass handling of 'landlord and tenant' cases of the local courts. So this type of estate, judged sociologically, is of great importance, but judged on the basis of its jurisprudential content, is almost negligible.

The most characteristic aspect of an estate from period to period is its continuity. While an estate for years ends at the expiration of its definite term, an estate from period to period will continue for successive periods unless it is terminated.

\*     \*     \*     \*     \*     \*

The continuity factor in estates from period to period gives special importance to 'notice' as a means of ending the relationship. Such notice is necessary. The required notice must be given at a date which precedes the intended terminal date by some prescribed period, as for example, thirty days before the end of one of the months under an estate from month to month. Thus, under such a tenancy dating from the first of the month, after any first of a month has passed the lessee has a certainty until the end of the next ensuing month. Thereby each of the parties has a limited degree of certainty as to duration, which is less than that had by a lessee under an estate for years but is greater than that typically had by the occupant under an estate at will or at sufferance."

■ In *Zoby v. Kosmadakes*, supra, the court described a tenancy from month to month as one for a month certain plus an expectancy or possibility of continuation for one or more similar periods; until rightful notice of termination is given this expectancy ripens at the turn of each month into a true tenancy for the ensuing month. We believe that this analysis of the relationship of the landlord and tenant where premises are rented from month to month is most appropriate in deciding the applicability of the savings clause here. To hold otherwise would be to torture the words "extended or renewed" contrary to the obvious purpose of the Act expressed in A.R.S. Sec. 33–1402:

"1.  To simplify, clarify and establish the law governing the rental of mobile home spaces and rights and obligations of landlord and tenant.

2.  To encourage landlord and tenant to maintain and improve the quality of mobile home housing."

That a tenancy from period to period is "renewed" after the expiration of the designated period when no rightful notice of termination is given, is reflected in A.R.S. Sec. 33–1501(B) which states:

"Unless otherwise agreed, rental agreements shall be for a term of one year and shall be automatically renewed on a yearly basis unless otherwise specified . . . or may be canceled by at least thirty days written notice given before the expiration of any such lease by either party."

We hold that a tenancy from month to month is not a continuing right of possession and if no rightful notice of termination is given, is extended or renewed for another month.

The respondent court is directed to set aside the judgment in favor of the real party in interest and to conduct further proceedings applying the provisions of A.R.S. Sec. 33–1401, et seq.

HOWARD, C. J., and KRUCKER, J., concurring.