458 P.2d 368

The STATE of Arizona ex rel., Dino DE CONCINI, City Attorney of the City of Tucson, Petitioner,

v.

The Honorable Charles GATEWOOD, magistrate of the City Court in and for the City of Tucson and Jesse Joe BAILEY, the real party in interest, Respondents.

No. 2 CA–CIV 734.

Court of Appeals of Arizona.

Sept. 8, 1969.

Rehearing Denied Oct. 6, 1969.

Review Denied Nov. 12, 1969.

Enos P. Schaffer, City Atty., City of Tucson, by J. Dan O'Neill, Asst. City Atty., for petitioner.

Mesch, Marquez & Rothschild, by John K. Mesch, Tucson, for respondents.

MOLLOY, Chief Judge.

This is a certiorari proceeding to review the dismissal of criminal complaint filed in the City Court of the City of Tucson charging a violation of § 11–18 of the Tucson Code. This section purports to make it unlawful for the owner or the operator of a bar or tavern " * * * to allow any person of the general public to loiter in or frequent such places * * *" between the hours of 1:00 a. m. and 6:00 a. m. on any week day or between 1:00 a. m. and 12:00 noon on Sunday.[1]

The complaint charging the real party in interest with the violation of § 11–18 was dismissed by the respondent court on the grounds that the ordinance was a violation of state statutes placing control of the liquor industry in the Department of Liquor Licenses and Control, A.R.S. § 4–111 et seq., and that the ordinance is unconstitutional.

State law provides that it is a misdemeanor

"For an on-sale or off-sale retail licensee or an employee thereof to sell, dispose of, deliver or give spirituous liquor to a person, or to allow a person to consume spirituous liquors on his premises, between the hours of one o'clock a. m. and six o'clock a. m. on week days,

and one o'clock a. m. and twelve o'clock noon on Sundays."

A.R.S. 4–244, subsection 15.

At all times pertinent, there was in effect a regulation of the Department of Liquor Licenses and Control, No. 41, as follows:

"No on-sale licensee shall permit his licensed premises to remain open to the public or permit persons other those licensed and his employees, while still on duty, to remain in a licensed premises after the hour of 1 A.M. unless he has first obtained written permission from the Superintendent to do so."[2]

■ Before applying to this Court for a special writ, the petitioner had applied for a similar writ in the Superior Court, sitting in Pima County, and been rejected there. It is our view that we have special writ jurisdiction to review the propriety of the order dismissing this criminal complaint and that the circuity of appeal and the public importance of the controversy merit such a review. See Shenfield v. City Court of City of Tucson, 8 Ariz.App. 81, 443 P.2d 443 (1968).

■ We first pass on the question of whether the subject ordinance is invalid as being an attempt to legislate in a field pre-empted by the State Legislature as a matter of state-wide concern. In Mayor and Common Council of City of Prescott v. Randall, 67 Ariz. 369, 196 P.2d 477 (1948), it was held:

"* * * that the city of Prescott may license and tax any person who has

1. § 11–18 must be read in conjunction with § 11–17 by reason of cross references: § 11–17. "Drinking establishments—Loitering in, frequenting during hours closed. It shall be unlawful for any person to loiter in or frequent, between the hours of 1:00 a. m. and 6:00 a. m. of any weekday or between 1:00 a. m. and 12:00 noon on Sunday any public bar, tavern, cocktail lounge or that part of any commercial place or building which is used for the principal purpose of dispensing spirituous liquor." (1953 Code, Ch. 18, § 10)

§ 11–18. "Same—Allowing frequenting during hours closed. It shall be unlawful

for any person owning, operating, managing or employed in any of the places designated in section 11–17 to allow any person of the general public to loiter in or frequent such places between the hours designated in section 11–17." (1953 Code, Ch. 18, § 11)

2. A.R.S. 4–112, subsec. B, par. 1(a) at the time pertinent here, granted to the superintendent of liquor licenses and control the authority to "[p]rescribe necessary rules and regulations (a) [f]or carrying out the provisions of this title." This same power is now vested in the State Liquor Board, Laws 1967, Ch. 133, § 5.

been licensed to deal in intoxicating liquors by the superintendent of the department of liquor licenses and control, but that it may not refuse to issue a city license or limit the number of licenses, such being the sole province of the superintendent * * *." (67 Ariz. 379, 196 P.2d 484).

Among the reasons expressed for this conclusion is that an analysis of the 1939 Liquor Code, of which our existing laws regulating the liquor industry are the successors in interest, demonstrated that the Legislature "intended to create and establish state-wide control over the traffic in intoxicating liquors". (67 Ariz. 375, 196 P.2d 481). The Court further stated: "To authorize cities and towns to regulate the liquor traffic would emasculate the entire state liquor code and create an absurd and ludicrous situation." (67 Ariz. 377, 196 P.2d 482).

Despite this broad language, we do not believe that our Supreme Court intended to completely exempt all liquor establishments from the purview of police powers delegated to municipal governments. The power of the City of Tucson to adopt ordinances " * * * deemed expedient to maintain the public peace, protect property, promote the public morals and welfare, and preserve the health of the inhabitants of the city" is clearly given to it by its charter. Chapter IV, § 1(19), Charter of the City of Tucson. The subject ordinance in no way interferes with the sale of intoxicating beverages during the hours permitted by state law. While one of the objects of the ordinance is undoubtedly to prevent illegal trafficking in liquor, after hours, we cannot say that this is its only purpose. Very little good comes from intoxicating liquor, and bars and taverns are productive of or associated with various types of activities regarded as antisocial, such as breaches of the peace, gambling, and prostitution. So long as the ordinance does not interfere with the regulated trafficking in liquor, as permitted by state law and regulation, we see no transgression upon the

State Liquor Code, but rather an attempt by the City to preserve its moral standards.

The ordinance that was struck down in the City of Prescott case was one that would have directly countermanded the licensing decisions made by the State Department— not so here. Generally, municipal legislation, while it may not contradict state law, " * * * may parallel it, or even go beyond it, so long as the two are not in conflict", Hislop v. Rodgers, 54 Ariz. 101, 115, 92 P.2d 527 (1939) and see McQuillin Municipal Corporations, Third Edition, section 15.-22, page 105.

That there is a regulation by the State Liquor Department as to persons permitted in bars after closing hours does not, in our opinion, invalidate this municipal ordinance. Whether or not regulation 41 is a valid exercise of the regulatory powers delegated to the Liquor Department is not directly before us at this time. But, whether valid or not, the regulation could not supercede the power of the City to exercise the powers delegated to it by its Charter, nor do we see any inconsistency between the regulation and the ordinance. Both can be observed, and a violation of each can have its separate penalties without inconsistency.

■ The challenge to the constitutionality, we believe, must be also answered in favor of this ordinance. The presumption of constitutionality is a strong one, and the court must, if possible, give a constitutional interpretation to ambiguous language. Arizona Podiatry Association v. Director of Insurance, 101 Ariz. 544, 422 P.2d 108 (1966). The attack upon "loitering" ordinances, championed by such eminent persons as Mr. Justice Douglas, see "Vagrancy and Arrest on Suspicion", 70 Yale L.J. 1 (1961), has been increasing in intensity. See Annot. 25 A.L.R.3d 836. Nevertheless, loitering ordinances which are limited in their application to particular areas or situations which have some reasonable relationship to the commission of antisocial conduct are almost universally upheld in the face of due process attack.

Even courts which have struck down loitering ordinances, because they applied indiscriminately to all persons in all places ("wandering or loitering abroad"), have recognized the necessity of loitering ordinances which are limited in their application. See Seattle v. Drew, 70 Wash.2d 405, 423 P.2d 522, 526, 25 A.L.R.3d 827 (1967).

In this state, we have State v. Starr, 57 Ariz. 270, 113 P.2d 356 (1941) which upholds a loitering statute which is limited to "the grounds of any public school * * * or within three hundred (300) feet thereof." In this decision, our Supreme Court held that the word "loiter" was not unconstitutionally vague and noted:

"Webster's dictionary defines 'loiter' 'To be slow in moving; delay; linger; saunter; lag behind.' The word 'loiter' does not signify anything bad or criminal except when given that significance in a criminal ordinance or statute." (58 Ariz. 272, 113 P.2d 357).

A certain amount of imprecision is inherent in all language. A reasonable degree of certainty is necessary in any criminal statute, but no more. See State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968).

Our Supreme Court has held that the legislature has the power to declare certain conduct to be criminal, even though unaccompanied by any criminal intent. Borderline Construction Co. v. State of Arizona, 49 Ariz. 523, 68 P.2d 207 (1937). While there are undoubtedly constitutional limitations to the extent that the police power may transgress upon essentially innocent conduct, see Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), we are not prepared to say that this particular statute, directed as it is to the loitering or frequenting of a tavern during certain limited hours, when the sale of liquor is no longer legal, by a "person of the general public"[3] is beyond the purview of the police power.

The inconvenience of this statute will be felt by very few while it is conceivable to this court that the ordinance may be helpful in controlling many types of anti-social conduct. The following decisions uphold loitering statutes which are comparable to the one now before this Court: Ricks v. United States, 228 A.2d 316 (D.C.App. 1967); Walker v. District of Columbia, 196 A.2d 92 (D.C.App. 1963); People v. Merolla, 9 N.Y.2d 62, 211 N.Y.S.2d 155, 172 N.E.2d 541 (1961), cert. denied 365 U.S. 872, 81 S.Ct. 906, 5 L.Ed.2d 861 (Justice Douglas voting to grant).

The order dismissing the subject complaint is reversed.

HATHAWAY and KRUCKER, JJ., concur.

3. We regard these words in the context at hand to be words of limitation. The respondents have argued that this ordinance prevents the proprietor from having personal friends in the bar after hours. In our view, such persons would not be "of the general public".