492 P.2d 1252

David A. YETMAN et al., Petitioners,

v.

William E. NAUMANN, Respondent.

No. 2 CA–CIV 1148.

Court of Appeals of Arizona, Division 2.

Jan. 20, 1972.

Risner, Wolf & Raven, by Roger Wolf and William J. Risner, Tucson, for petitioners.

Robertson, Molloy, Fickett & Jones, by John F. Molloy, Tucson, for respondent.

HOWARD, Judge.

Petitioners, plaintiffs below, filed a special action in the superior court alleging that the respondent is a member of the Arizona State Board of Health, that the said board is now considering a petition filed by Phelps-Dodge Corporation, American Smelting & Refining Company and eight other copper companies to reduce or modify certain state air pollution standards and further alleging in Paragraphs V & VI of their complaint:

"V

Defendant is chairman of the Board of M. M. Sundt Construction Company. Payments to defendant by the M. M. Sundt Construction Company exceed five percent of his total annual income. M. M. Sundt Construction Company has now and has had in the past a number of construction contracts with various copper companies for construction in the State of Arizona.

VI

The defendant has a substantial interest in said decision of the board of which he is a member by reason of past and current contracts between defendant's company and various copper companies and by reason of the fact that a decision by the Board of Health favorable to the copper companies, i. e., for the relaxation of air pollution standards, would increase the prospects of more contracts between Naumann's company and the copper companies. Conversely, an adverse decision would decrease the prospects of such contracts."

The complaint further alleges that respondent is participating in the board's decision on the petition filed by the mines contrary to our conflict of interest statute, A.R.S. § 38–503, subsec. B. The complaint then asked, *inter alia,* that the trial court order respondent to refrain from participating in the decision regarding the mines.

Attached to the complaint are various newspaper articles. One concerns an incident that occurred in March of 1970, wherein M. M. Sundt Construction Co. was challenging Pima County's air pollution ordinances; another article of December 1970, states that the decision of Phelps-Dodge Corp. to postpone for two years its plan to open a new mine near Morenci has cost 392 Sundt Construction Co. workers their jobs. The last article is dated November 17, 1971, and is entitled, *Industry Wins Two Battles In Pollution Fight* and relates how the respondent, as a member of the advisory board of the County Air Pollution Control District, won his argu-

ment against a proposal to tighten smoke-stack emission standards.

Respondent did not deny the allegations of the complaint but rather moved to quash the complaint on the ground that A. R.S. § 38–503 was unconstitutionally vague. The trial court agreed and dismissed the complaint. This ruling is challenged by the instant special proceeding.

A.R.S. § 38–503, subsec. B states:

"Any public officer or employee who has, or whose relative has, a *substantial interest* in any decision of a board, administrative official, commission, or legislative or administrative body of which he is a member or to which he makes recommendations, shall make known such interest in the official records of such board, commission, or legislative or administrative body and shall refrain from participating in any manner as an officer or employee in such decision." (Emphasis added)

A violation of A.R.S. § 38–503, subsec. B carries the risk of criminal prosecution. A.R.S. § 38–504 states:

"Any public officer or employee who knowingly, wilfully or intentionally conceals or fails to disclose any substantial interest or who violates any provision of this article shall be guilty of a felony, and upon conviction shall forfeit his office."

A.R.S. § 38–502 contains definitions and provides in paragraphs 5 and 6:

"5. 'Remote interest' means:

(a) That of a nonsalaried officer of a nonprofit corporation.

(b) That of a landlord or tenant of the contracting party.

(c) That of an attorney of a contracting party.

(d) That of a member of a nonprofit cooperative marketing association.

(e) The ownership of less than three per cent of the shares of a corporation for profit, provided the total annual income from dividends, including the value of stock dividends, from the corporation does not exceed five per cent of the total annual income of such officer or employee, and any other payments made to him by the corporation do not exceed five per cent of his total annual income.

(f) That of an officer in being reimbursed for his actual and necessary expenses incurred in the performance of official duty.

(g) That of a recipient of public services generally provided by the incorporated city or town, political subdivision or state department, commission, agency, body or board of which he is an officer or employee, on the same terms and conditions as if he were not an officer or employee.

6. 'Substantial interest' means any interest, either direct or indirect, other than a remote interest."

In support of its vagueness theory respondent made the following assertion both below and here:

"Certainly many persons are substantially interested in pollution control. A person suffering from respiratory disease is substantially interested in 'decisions' on this subject. So are doctors who treat persons with respiratory diseases. So are homeowners and landlords where pollutants come. So are subdividers of land. So are those who live next to smelter stacks. So are those who own one share of mining company stock. So are those who work for mining companies. So are those who deliver milk and sell haircuts to miners.

The chosen statutory language does not set a reasonably clear demarcation line between these innumerable classifications of persons who are 'interested' in these 'decisions.'

The danger of a statute such as this, which threatens to brand one a felon, is that responsible and interested persons will shy away from serving on public boards and agencies."

Courts have a duty, whenever possible, to construe a statute so as to ren-

der it constitutional. State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968). We agree with respondent that the dividing line between what is lawful and unlawful cannot be left to conjecture, State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964), but statutes are not automatically invalidated because there is difficulty in determining whether certain marginal offenses fall within their language. Shenfield v. City Court, 8 Ariz.App. 81, 443 P.2d 443 (1968). Furthermore, as we recently indicated in State v. Hixson, 16 Ariz.App. 251, 492 P.2d 747 (filed January 17, 1972), constitutionality does not necessarily depend upon a delineation of specific acts which would fit into the proscribed conduct.

■ Although as a general rule statutory provisions providing for civil and penal liability are to be strictly construed, the "strict construction" rule is not applied so as to defeat the legislative intent. State ex rel. Stowell v. Littrell, 14 Ariz.App. 203, 481 P.2d 889 (1971).

■ The prohibition against participation in a decision of an administrative board by a member having a "substantial interest" in the decision is clearly for the purpose of preventing a board member from placing himself in a position whereby he would have a possible conflict of interest. Cf. Bushnell v. Superior Court, 102 Ariz. 309, 428 P.2d 987 (1967). The object of conflict of interest statutes is to remove or limit the possibility of personal influence which might bear upon an official's decision. Stigall v. City of Taft, 58 Cal. 2d 565, 25 Cal.Rptr. 441, 375 P.2d 289 (1962); United States v. Mississippi Valley Generating Co., 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961). As the United States Supreme Court aptly stated in the Mississippi Valley case, supra:

"The statute is thus directed not only at dishonor, but also at conduct that tempts dishonor. This broad proscription embodies a recognition of the fact that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government." 364 U.S. at 549, 81 S.Ct. at 309.

■ We do not conceive that the term "substantial interest" suffers from vagueness, as respondent contends. The legislature itself has defined the term, § 38–502, subsec. 6, and such definition is binding on the courts. Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528 (1947); 50 Am.Jur. Statutes § 262 (1944). It is clear that in order to guard against conduct of a public officer or employee potentially inimical to the public interest, the legislature deemed it necessary to give the term "substantial interest" a broad encompassing definition. Therefore, according to the legislative definition, any interest which does not fall within the seven classifications set out in A.R.S. § 38–502, subsec. 5 constitutes a "substantial interest." We do not believe however, that the legislature intended that the word "interest" for purposes of disqualification was to include a mere abstract interest in the general subject or a mere possible contingent interest. Rather, the term refers to a pecuniary or proprietary interest, by which a person will gain or lose something as contrasted to general sympathy, feeling or bias. Moody v. Shuffleton, 257 P. 564 (Cal.App.1927), rev'd on grounds that an "interest" was shown, 203 Cal. 100, 262 P. 1095 (1928).

Finding no constitutional infirmity in the statute we conclude that the trial court erred in dismissing the petitioners' application for relief and the order of dismissal is set aside.[1]

KRUCKER, C. J., and HATHAWAY, J., concur.

---

1. At the conclusion of the hearing on this petition for special action, we directed by minute entry order that the dismissal order be vacated, indicating that a written opinion would follow.