Carl Johannes **ANDERSON**, Appellant.

v.

Walter C. **NEMETZ**, Individually and as Chief of the City of Scottsdale Police Department, et al., Appellees.

No. 72–1109.

United States Court of Appeals, Ninth Circuit.

Jan. 24, 1973.

Rehearing Denied Feb. 20, 1973.

---

Paul G. Ulrich (argued), Roger W. Kaufman, of Lewis & Roca, Phoenix, Ariz., for appellant.

James G. Bond, Asst. Atty. Gen. (argued), Gary K. Nelson, Atty. Gen., Phoenix, Ariz., for appellee.

Before ELY and GOODWIN, Circuit Judges, and FERGUSON,* District Judge.

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

FERGUSON, District Judge:

This is an appeal from a final judgment dismissing an action brought under the Civil Rights Act, 42 U.S.C. § 1983, for declaratory and injunctive relief against further prosecution under a section of the Arizona vagrancy statute. We reverse and remand.

The undisputed facts reveal the following:

1. Arizona Revised Statutes § 13–991, subsec. 3 provides:

"The following are vagrants and shall be punished by imprisonment in the county jail for not to exceed ninety days:

\* \* \* \* \* \*

"3. A person who roams about from place to place without any lawful business."

2. In 1967, appellant, a 20-year-old resident of Scottsdale, was arrested by two city police officers and charged under section three of the vagrancy statute.

3. He was taken to the police station, questioned, stripped and searched for narcotics. No evidence of any crime was found and he was released on $50 bond.

4. A complaint was filed against him, and a court trial was held in the Scottsdale City Court. The officers testified that they arrested appellant because they believed he was in a place where he should not be, he had no legal business being there, and he could give no satisfactory reason why he should be there.

5. Appellant's sole defense was the unconstitutionality of the statute. His motion to dismiss the prosecution was denied and he was found guilty.

6. He appealed to the Maricopa County Superior Court on the City Court trial transcript. That court denied appellant's motion to dismiss on constitutional grounds, affirmed the conviction, and returned the case to the City Court.

7. Appellant then appealed to the Arizona Court of Appeals, again challenging the constitutionality of the statute. The Court of Appeals dismissed the appeal, holding that the Superior Court had improperly affirmed the City Court judgment instead of conducting a de novo trial. State v. Anderson, 9 Ariz. App. 42, 449 P.2d 59 (1969).

8. Anderson again appeared in the Superior Court, and a trial was conducted on the basis of the City Court transcript. Again, he challenged the constitutionality of the statute. The Superior Court found appellant not guilty and exonerated his bond, without considering the constitutional issues presented.

9. Shortly thereafter, in 1969, appellant brought this action in the district court. The uncontroverted facts before that court reveal:

(a) Appellant is a Scottsdale resident.

(b) He desires to walk about the streets in Arizona without being subject to arrest for vagrancy based solely upon his presence on the streets.

(c) On many occasions he has walked from place to place without pursuing any business purpose, either lawful or unlawful, but merely for personal reasons.

(d) He intends to continue his walking.

(e) The law enforcement officers of Arizona will continue to enforce the statute against appellant for the same conduct which occurred at his original arrest.

(f) During 1967, 1968 and 1969, 384 arrests were made in Scottsdale under the statute.

(g) Over 90% of the arrests led to court proceedings.

(h) There have been no state appellate court or federal court proceedings in which the constitutionality of any part of A.R.S. § 13–991 has been determined.

10. During the pendency of the action in the district court, the Attorney Gen-

eral of Arizona asked the State Legislature to repeal the statute. The legislature refused.

*Constitutionality*

■ The unconstitutionality of the statute on its face is plain. *See* Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Appellees concede that the statute is not constitutionally defensible and contend only that (1) appellant lacks standing to challenge its constitutionality, and (2) the federal courts should abstain from exercising jurisdiction.

*Standing*

■ Appellees assert that appellant lacks standing to challenge the statute because he is not presently under arrest. In Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969), the Supreme Court reaffirmed that no federal court has jurisdiction to hold any statute void for repugnance to the Constitution *"except as it is called upon to adjudge the legal rights of litigants in actual controversies."* The Court adopted the test set forth in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

> "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

In Golden v. Zwickler, the plaintiff sought a declaratory judgment that the statute under which he was prosecuted for distributing anonymous political handbills was unconstitutional. The

leaflets had attacked a Congressman who had run for reelection but had since become a judge. The Court held that since it was most unlikely that the former Congressman would again run for Congress, it was highly doubtful that another occasion would arise when the plaintiff would again be prosecuted for his conduct.

The test is one of reality. Zwickler was prosecuted once, but because the Congressman who was the original target of the handbills would not again stand for reelection, it was not within the realm of reality that another prosecution would result under the statute.

In Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958), appellant refused to comply with a bus driver's order that he move to the rear of the bus. Thereupon two police officers boarded the bus and ordered appellant to move to the rear, get off, or be arrested. Appellant chose to get off. The Court held that

> "[w]e do not believe that appellant, in order to demonstrate the existence of an 'actual controversy' over the validity of the [state] statute here challenged, was bound to continue to ride the Memphis buses at the risk of arrest if he refused to seat himself [in the rear of the bus]. A resident of a municipality who cannot use transportation facilities therein without being subjected by statute to special disabilities necessarily has, we think, a substantial, immediate, and real interest in the validity of the statute which imposes the disability." 358 U.S. at 204, 79 S.Ct. at 179.

The use of the sidewalks of Scottsdale presents the same immediate and real controversy as does the use of the buses in Memphis.

In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that while one plaintiff had an "acute, live controversy" with the state because he had been indicted, three other plaintiffs, who sought an injunction against prosecution because they

"felt inhibited" by the statute, did not have standing to maintain the action:

"If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true . . . then a genuine controversy might be said to exist. But [they] do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. . . . [P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs [in cases to enjoin a state prosecution]. . . ." 401 U. S. at 42, 91 S.Ct. at 749.

■ Appellant Anderson's fears of prosecution by the state are not "imaginary or speculative." He has already been arrested once, and has endured four rounds of trial and appeals. The declared intention of the state to continue to enforce the statute against him, coupled with the 384 arrests over a three-year period in Scottsdale alone, provide a realistic basis for fear of prosecution, and serve to establish the "acute, live controversy" required for standing. Appellant also clearly has the "personal stake in the outcome of the controversy [necessary] to assure that concrete adverseness which sharpens the presentation of issues" detailed in Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968), and in Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962).

In Boyle v. Landry, 401 U.S. 77, 80–81, 91 S.Ct. 758, 760, 27 L.Ed.2d 696 (1971), the Court denied standing because

"[n]ot a single one of the [plaintiffs] had ever been prosecuted, charged, or even arrested under the . . . statute . . . . [T]he complaint contains no mention of any specific threat by any [law enforcement] official . . . to arrest or prosecute any . . . of the plaintiffs . . . . ."

And in Poe v. Ullman, 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961), the Court held that standing was lacking because "[t]he fact that Connecticut has not chosen to press the enforcement of this statute deprives these controversies of the immediacy which is an indispensable condition of constitutional adjudication." It is apparent that neither Boyle v. Landry nor Poe v. Ullman deprives the appellant of standing in the instant case.

We hold that the appellant has standing to challenge the statute. The threat of future arrest is immediate and real. He need not suffer the ignominy of a further arrest and strip search. Standing to challenge is not a special status conferred only upon the brave or those who are willing to physically give up their liberty. The courthouse is open as well to the physically timid but intellectually and morally strong.

### Abstention

Appellees next assert the doctrine of abstention. That concept of federalism, of course, is set forth by the Supreme Court in the companion cases of Younger v. Harris, *supra*, through Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L. Ed.2d 701 (1971), and finally in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

*Mitchum* determined that the Civil Rights Act, 42 U.S.C. § 1983, falls within the express exception to the federal anti-injunction statute, 28 U.S.C. § 2283. However, the Court emphasized the Younger v. Harris principles of equity, comity and federalism that must restrain a federal court when asked to enjoin a state court proceeding.

In *Younger*, an injunction against a pending state criminal prosecution was reversed "as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41, 91 S.Ct. at 749.

■ Appellant argues that the Younger v. Harris series of decisions is inapplicable by their terms to cases such

as the instant one where there is no pending state court proceeding. We agree. The sentence of Younger v. Harris following that quoted above explicitly states that

> "[w]e express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." 401 U. S. at 41, 91 S.Ct. at 749.

Moreover, Justice Stewart, in his concurring opinion joined by Justice Harlan, expressly noted that

> "[i]n all of these cases, the Court deals only with the proper policy to be followed by a federal court when asked to intervene by injunction or declaratory judgment in a criminal prosecution *which is contemporaneously pending in a state court.*" 401 U.S. at 54–55, 91 S.Ct. at 757. (Emphasis added.)

Justice Brennan's concurring opinion, joined in by Justices White and Marshall, also distinguished the *Younger* decisions from cases where "no state proceeding was pending at the time jurisdiction attached in the federal court." 401 U.S. at 57 n., 91 S.Ct. at 755.

There are sound policy reasons for holding that the abstention doctrine enunciated in *Younger* and its companion cases should not be applied in cases where no state prosecution is pending. Mr. Justice Brennan, in a separate opinion in Perez v. Ledesma, *supra,* 401 U.S. at 93, 103–104, 91 S.Ct. at 686, joined by Justices White and Marshall, stated that

> "[t]he key predicate to answering the question whether a federal court should stay its hand, is whether there is a pending state prosecution where the federal court plaintiff may have his constitutional defenses heard and determined. . . . If the state prosecution was first filed and if it provides an adequate forum for the adjudication of constitutional rights, the federal court should not ordinarily intervene. When, however, . . . at the time of the federal hearing there is no state prosecution to which

the federal court plaintiff may be relegated for the assertion of his constitutional defenses, the primary reason for refusing intervention is absent. . . ."

Justice Brennan also noted the disruptive effect that federal intervention may have on state court proceedings. He contrasted the situation in which "there is a continuing live controversy and federal intervention is sought when there is no state prosecution in which the statute may be tested." In such a situation, "the justification for intervention is that individuals should be able to exercise their constitutional rights without running the risk of becoming lawbreakers." 401 U.S. at 120–121, 91 S.Ct. at 695; *cf.* Thoms v. Smith, 334 F.Supp. 1203, 1207 (D. Conn. 1971).

In Hull v. Petrillo, 439 F.2d 1184, 1188 (2nd Cir. 1971), the court stated the purpose of the abstention doctrine to be "basically twofold: to maintain a proper working relationship between the state and federal units of government, and to avoid premature constitutional adjudication in the federal courts." If no state prosecution is pending, "the harmonious relation between state and federal authority," Railroad Commission v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), is not threatened. Moreover, it is clear that where state courts have refused to rule on constitutional issues, "premature constitutional adjudication" will not result from the federal court's exercise of jurisdiction.

Our holding that the *Younger* series of cases does not bar federal intervention where no state prosecution is pending is in accord with recent federal decisions. For example, in Thoms v. Smith, *supra,* a three-judge district court refused to abstain from deciding whether Connecticut's "misuse of the flag" statute was constitutional, in an action brought under the Civil Rights Act. The court stated that "[b]ecause there is no prosecution pending against Thoms or the class he represents, *Younger* is inapplicable and imposes no bar to our consideration of the merits."

334 F.Supp. at 1206.[1] In Hull v. Petrillo, *supra,* the court reversed the dismissal of an action for declaratory and injunctive relief regarding the application to newspapers of an ordinance requiring a license to sell books on the street. It distinguished the Younger v. Harris series of cases on the ground that the case before it did "not concern a situation where a federal court has been called upon to enjoin a pending state prosecution." 439 F.2d at 1186 n.1. Other courts have refused to apply the doctrine of abstention where no state prosecution is pending in Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971); Anderson v. Vaughn, 327 F.Supp. 101 (D.Conn. 1971); and C'est Bon, Inc. v. North Carolina State Board of Alcoholic Control, 325 F.Supp. 404 (W.D.N.C.1971); *cf.* Cantrell v. Folsom, 332 F.Supp. 767 (M.D.Fla.1971).

■■ We hold that the Younger v. Harris series of cases is inapplicable in the absence of a pending state criminal prosecution, and accordingly there is no basis for federal abstention in this case.[2]

### Three-Judge Court

■ Appellant, in filing his action, sought the convening of a three-judge district court pursuant to 28 U.S.C. § 2281 to enjoin the enforcement of a state statute of statewide importance. The district court dismissed the action without convening the three-judge panel. The dismissal of the action was in error. The question remains as to what disposition of the proceedings should be made by this court.

Appellees concede that if appellant has standing and the court does not abstain from exercising its jurisdiction, it would be a needless strain upon the administrative procedures of the federal courts to require that the district court be directed to convene the statutory three-judge court. They admit the propriety of the rule set forth in Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d

1. The *Thoms* court also found that the plaintiff had standing to maintain the action "in the context of active enforcement of the criminal statute" despite the fact that he had not been prosecuted under it. The plaintiff had merely sought an indication as to whether he would be prosecuted and had been told that he would be if he engaged in certain conduct. The court emphasized, however, that "[b]ecause the interest affected arises under the first amendment, we should be especially vigilant that it not go unprotected." 334 F. Supp. at 1207. A similar finding of standing was made by the same three-judge court in Anderson v. Vaughn, *infra.*

2. Even if appellant were currently subject to a state criminal prosecution, so that the Younger v. Harris decisions were applicable, abstention would not be warranted. *Younger* established the criteria for determining when federal intervention is permissible even when a state court prosecution is pending. They are: (1) where irreparable injury is "both great and immediate" in that there is a threat to federally protected rights that cannot be eliminated by a defense against a single prosecution, *or* (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions," *or* (3) where there is a showing of "bad faith, harassment, or . . . other unusual circumstance[s] that would call for equitable relief." Younger v. Harris, *supra,* 401 U.S. at 46, 53–54, 91 S.Ct. at 755; Mitchum v. Foster, *supra,* 407 U.S. at 230, 92 S.Ct. 2151.

The facts of this case indicate that although the tests are in the disjunctive, appellant has met all three.

With reference to the first, he has asked the Arizona state courts on four occasions to declare the statute unconstitutional, without success. During three years of litigation in the state courts he did not once dispute the facts alleged by the police; he only contended that the statute was unconstitutional.

The second test is also met by appellant. The unconstitutionality of the statute on its face is so patent that it is conceded by appellees.

The third test is likewise met. Appellees assert that "[o]ne of the prime objectives of a vagrancy statute is prevention of the far more serious crimes that are likely to occur when persons are allowed to wander aimlessly about without lawful business, as portrayed by the facts of Anderson's arrest in 1967." No clearer statement of bad-faith prosecution can be made. The statute is being used for the purpose of making arrests to permit investigation of other activities.

512 (1962), that when the unconstitutionality of a statute is no longer a litigable issue, the reason for convening a three-judge court is inapplicable, and a single-judge district court has jurisdiction to make an expeditious disposition of the litigation. As was stated in Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129, 131 n.1 (2nd Cir.), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed. 2d 102 (1967), "Congress could not have intended to require three judges to be assembled when decision could not possibly go in any manner save one."

As the result of *Papachristou, supra,* the unconstitutionality of the Arizona vagrancy statute is apparent. The district court can only grant appellant his relief. In order to avoid needless further proceedings, and in order to dispose of this litigation as expeditiously as is consistent with proper judicial administration, the judgment of the district court is reversed, and the cause is remanded to the district court with directions to enter a decree granting appellant injunctive and declaratory relief against further enforcement of the statute.