520 P.2d 1166

STATE of Arizona ex rel. Herbert E. WILLIAMS, Tucson City Attorney, Appellant,

v.

CITY COURT OF TUCSON, Pima County, Arizona; William Druke, magistrate thereof; and Jesse Bernard COHEN, the Real Party in Interest, Appellees.

No. 2 CA–CIV 1513.

Court of Appeals of Arizona, Division 2.

April 9, 1974.

E. Hildebrandt, Asst. City Atty., Tucson, for appellant.

Risner, Wolf & Raven, by Roger C. Wolf, Tucson, for appellees.

OPINION

HATHAWAY, Chief Judge.

Appellee Cohen was charged in City Court with a violation of the following ordinance:

"Sec. 11–33. Loitering.
A person is guilty of loitering when he:
(1) Loiters, remains or wanders about in a public place for the purpose of begging . . . ."

The city magistrate sustained the appellee's attack on the constitutionality of the subject ordinance, ruling that it suffered from vagueness and overbreadth, and dismissed the complaint. This ruling was upheld by the superior court in a special action instituted by appellant, hence this appeal.

The court's findings below that this ordinance fails to give a person of ordinary intelligence fair notice of what conduct is proscribed are unjustified in our opinion. The ordinance contains two elements: (1) the act of loitering; and (2) having the purpose of begging.

The word "loiter" (as well as the words "remain" or "wander") must be construed in the context of the rest of the statute and is not per se unconstitutionally vague. State v. Kimball, 503 P.2d 176 (Haw.1972). The United States Supreme Court in Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965) upheld a "loitering" ordinance when it had been construed to apply to specific conduct:

"The Alabama Court of Appeals has thus authoritatively ruled that § 1142 applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on. It is our duty, of course, to accept this state judicial construction of the ordi-

James Webb, Tucson City Atty., Herbert E. Williams, Former City Atty., William

nance. [citations omitted] As so construed we cannot say that the ordinance is unconstitutional though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied." (382 U.S. at 91, 86 S.Ct. at 214, 15 L. Ed.2d at 180).

In State v. Starr, 57 Ariz. 270, 113 P.2d 356 (1941), our Supreme Court found that the word "loiter" was not unconstitutionally vague, and upheld a statute proscribing loitering on the grounds of a public school or within 300 feet thereof, noting:

"Webster's dictionary defines 'loiter' 'To be slow in moving; delay; linger; saunter; lag behind.' The word 'loiter' does not signify anything bad or criminal except when given that significance in a criminal ordinance or statute." (57 Ariz. 272, 113 P.2d 357).

In State ex rel. De Concini v. Gatewood, 10 Ariz.App. 274, 458 P.2d 368 (1969), we upheld an ordinance making it illegal to loiter in a bar or tavern during certain hours. A statute prohibiting loitering without more would be invalid as vague. Loitering alone is not prohibited here, but loitering "for the purpose of begging." When "loitering" is joined with a second specific element, courts have uniformly found that such legislation sufficiently informs a person of common understanding as to what is forbidden. A series of New York cases [many collected in the annotation at 25 A.L.R.3d 836, 842 (1969)] illustrates this view. The author of the annotation summarizes these cases as follows:

"The thrust of the New York cases appears to be that legislation merely punishing 'loitering' is unconstitutionally vague, but that where the term 'to loiter' or 'loitering' is used in connection with or to describe another prohibited act, such legislation is valid." 25 A.L.R.3d at 842.

Thus, New York courts have upheld a statute making it a misdemeanor to loiter in the common areas of a building *for the purpose of* unlawfully using or possessing any narcotic durg. People v. Pagnotta, 25 N.Y.2d 333, 305 N.Y.S.2d 484, 253 N.E.2d 202, 48 A.L.R.3d 1264 (1969); People v. L., 66 Misc.2d 191, 320 N.Y.S.2d 456 (1971); Burmeister v. New York Police Department, 275 F.Supp. 690 (S.D.N.Y. 1967). In People v. Willmott, 67 Misc.2d 709, 324 N.Y.S.2d 616 (1971), the court upheld the validity of a statute which prohibited loitering "in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature." In People v. Diaz, 4 N.Y.2d 469, 176 N.Y.S.2d 313, 151 N.E.2d 871 (1958), the New York Court of Appeals held an ordinance which prohibited mere loitering to be unconstitutionally vague. The court noted that while the term "loiter" or "loitering" has acquired a common and accepted meaning "it does not follow that by itself, and without more, such term is enough to inform a citizen of its criminal implications . . . ." (176 N.Y. S.2d at 315, 151 N.E.2d at 872). However the court carefully distinguished the ordinance before it from others as follows:

"Whenever a conviction for loitering has been upheld, it is because the statute uses the term 'loiter' or 'loitering' to point up the prohibited act, either actual or threatened. For instance, under the Penal Law loitering is deemed 'disorderly conduct' whenever 'Any person * * * with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned * * * Congregates with others on a public street and refuses to move on * * * Frequents or loiters about any public place soliciting men' (Penal Law, § 722, subds. 3, 8). When a statute is so framed, the term 'loiter' or 'loitering' takes on significance as a prohibited act, in the violation of which a crime is deemed committed (cf. People v. Hussock, 6 Misc.2d 182, 23 N.Y.S.2d 520, certiorari denied 312 U.S. 659, 61 S.Ct. 733, 85 L.Ed. 1107) and convictions had thereunder have been upheld (cf. People v. Galpern, 259 N.Y.

279, 181 N.E. 572, 83 A.L.R. 785; People v. Gaskin, 306 N.Y. 837, 118 N.E.2d 903)."

In Wright v. Munro, 144 Cal.App.2d 843, 301 P.2d 997 (1956), the court examined the constitutionality of section 25657 of the California Business and Professions Code which is highly similar to the ordinance under consideration:

"It is unlawful:

\* \* \* \* \* \*

(b) In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to *loiter* in or about said premises *for the purpose of begging* or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting." (Emphasis added)

The court had no trouble upholding the statute against a contention that it was unconstitutionally vague and found the word "loiter" to be "clear and certain". (301 P. 2d at 1000).

In People v. Weger, 251 Cal.App.2d 584, 59 Cal.Rptr. 661 (1967) cert. den. sub nom. California v. Weger, 389 U.S. 1047, 88 S. Ct. 774, 19 L.Ed.2d 840 (1968) (Douglas, J., dissenting), the California Court of Appeals rejected a contention that the following statute [Penal Code § 647(e)] [1] is vague:

"Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor:

\* \* \* \* \* \*

(e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account

for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification."

Six years later, the same court in reconsidering the constitutionality of this same statute in light of intervening United States Supreme Court decisions, found the statute to be constitutionally sound. People v. Solomon, 33 Cal.App.3d 429, 108 Cal.Rptr. 867 (1973). The reasoning in People v. Weger, supra, 59 Cal.Rptr. at 667, supports the position that an enactment is not necessarily unconstitutionally vague when it proscribes loitering so long as there are additional elements to the offense which go beyond mere loitering:

"As now written, section 647, subdivision (e), does not make loitering and wandering upon the streets or from place to place without apparent reason or business without more a punishable offense. As there used the words do not connote unlawful activity. [Citation omitted] They do no more than describe the person who may be asked by a peace officer to identify himself and to account for his presence in the prescribed circumstances. As so used the words 'loiter' and 'wander' are not so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application. (Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888; United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989." (footnote omitted)

In State v. Armstrong, 282 Minn. 39, 162 N.W.2d 357 (1968), the Supreme Court of Minnesota considered the validity of an ordinance forbidding any person to loiter

---

[1]. It is of interest that this section also makes it a misdemeanor to accost "other persons in any public place or in any place open to the public for the purpose of begging or soliciting alms." Penal Code § 647(c). While we have found no judicial construction of this subsection, it is evident that section 647 was enacted in 1961 to replace former § 647 (repealed by Stats.1961, c. 560, p. 1672 § 1)

portions of which had been found unconstitutional. See In re Newbern, 53 Cal.2d 786, 3 Cal.Rptr. 364, 350 P.2d 116 (1960). Before the enactment of § 647, it was given a good deal of scrutiny as to its constitutionality. See Note, 36 Journal of the State Bar of California 801 (1961); and A. Sherry, Vagrants and Vagabonds—Old Concepts in Need of Revision, 48 Cal.L.R. 557 (1960).

with intent to solicit for purposes of prostitution or any other acts prohibited by law. In upholding the statute, the court reasoned as follows (162 N.W.2d at 360):

"The offense defined by each of the two ordinances consists of two essential elements: (1) The act of lurking or loitering and (2) a proved intent to commit an unlawful act. Whatever the arguable ambiguity or generality as to the element of 'lurking' or 'loitering,' there is none whatever as to the element of intent. The element of intent gives a meaning to the element of lurking or loitering and is a rational basis for proscribing such acts as harmful conduct. Both elements of the offense must, of course, be proved. The overt act of lurking or loitering, standing alone, is not made punishable by the provisions of the ordinances under which defendant was charged. An unlawful intent, without more, is not made punishable. Because of this required union of overt act and unlawful intent, defendant is protected from punishment either for harmless conduct or for harmful conduct the criminality of which had not been fairly communicated to her. See Omaechevarria v. State of Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495."

In City of Seattle v. Jones, 79 Wash.2d 626, 488 P.2d 750 (1971), the Washington court upheld an ordinance forbidding loitering under circumstances manifesting the purpose of inducing another to commit prostitution. While it is true that the ordinance listed certain types of conduct to be considered by an officer in determining whether an unlawful purpose is manifested, the court made it clear that "(t)he examples in section (g) are not exclusive, but merely demonstrate some of the types of conduct which may be considered in determining whether an unlawful *purpose* or *intent* is manifested." (488 P.2d at 752, emphasis in original).

We see no merit in appellee's contention that merely because not all forms of the *act* of begging are illegal (see A.R.S. § 13–991), it is beyond the city's power to proscribe the *intent* to beg. We have neither found nor have we been cited to any authority holding that a legislative body is limited in determining any intent to be illegal so long as there is an overt act combined with such intent (here it is loitering) and so long as legislation does not proscribe constitutionally protected activities.

The word "begging" in the ordinance we are considering refers to the solicitation of money or other valuable consideration without giving consideration in return. This is undoubtedly what it would mean to a man of ordinary intelligence when read in the context of the subject ordinance.

We hold that the proscription of the act of loitering, when combined with the purpose of begging as contained in the subject ordinance, puts a reasonable person on notice as to exactly what conduct is forbidden. The case relied on by the appellee, Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), is clearly distinguishable. The statute in that case was not only overbroad in that it punished protected conduct, but it was also vague in that it punished one for, among other things, mere "loitering", being a "common thief", "prowling by auto", and being a "vagabond". There was no workable and accepted definition for many of the acts and conditions punished by the ordinance.

The subject ordinance does not place "unfettered discretion" in the hands of police as the appellee contends. Certainly the police would have no more discretion under this ordinance than under the above-cited ordinances which have been held constitutional. Before an arrest can be made, the officer must not only have probable cause to believe that the suspect is loitering, but also that he has the purpose, or intent to beg. This require-

ment insures that the police may not use the ordinance as a tool for harsh and discriminatory enforcement against those whom the officer considers as "undesirables." Without some hard evidence that the "undesirable" has an intent to beg (obviously this, in most cases, will consist of the act of begging), the officer would be exceeding his defined power under the ordinance in arresting him. There is no contention that there has been arbitrary enforcement of this ordinance in the past.

As the United States Supreme Court stated in Colten v. Commonwealth of Kentucky, 407 U.S. 104 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972):

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

Based upon the authority cited above, together with plain common sense, we see no constitutional invalidity in the subject ordinance.

Reversed.

HOWARD, J., concurs.

KRUCKER, Judge (dissenting).

A fundamental aspect of the somewhat amorphous concept of due process of law is that a penal statute must state with reasonable clarity the acts its proscribes. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The dividing line between what is lawful and unlawful cannot be left to conjecture. Yetman v. Naumann, 16 Ariz.App. 314, 492 P.2d 1252 (1972). In State ex rel. De Concini v. Gatewood, 10 Ariz.App. 274, 458 P.2d 368 (1969), we stated:

"The attack upon 'loitering' ordinances, championed by such eminent persons as Mr. Justice Douglas, see 'Vagrancy and Arrest on Suspicion', 70 Yale L.J. 1 (1961), has been increasing in intensity. See Annot. 25 A.L.R.3d 836. Nevertheless, loitering ordinances which are limited in their application to particular areas or situations which have some reasonable relationship to the commission of antisocial conduct are almost universally upheld in the face of due process attack." 10 Ariz.App. at 276, 458 P.2d at 370.

In the De Concini case, supra, the ordinance did not apply indiscriminately to all persons in all places but was limited in its application. In State v. Starr, 57 Ariz. 270, 113 P.2d 356 (1941), a loitering statute limited to the grounds of a public school or within 300 feet thereof, was upheld and the court pointed out that the word "loiter" does not signify anything bad or criminal except when given that significance in a criminal ordinance or statute.

The Ninth Circuit Court of Appeals recently held that subsection 3 of A.R.S. § 13–991, providing that a person who roams about from place to place without any lawful business shall be punished as a vagrant, is unconstitutional on its face. Anderson v. Nemetz, 474 F.2d 814 (9th Cir. 1973). In so holding, the court relied on the United States Supreme Court decision of Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

The Supreme Court in Papachristou condemned the ordinance in question on vagueness grounds because (1) it failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden and (2) it encouraged arbitrary and erratic arrests and convictions. As to the latter aspect of vagueness, the court denounced the effect of the unfettered discretion it places in the hands of the police, stating:

"Where, as here, there are no standards governing the exercise of the discretion

granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.' [Citation omitted] It results in a regime in which the poor and the unpopular are permitted to 'stand on a public sidewalk . . . only at the whim of any police officer.' [Citation omitted]" 92 S.Ct. at 847.

If arbitrary and discretionary enforcement is to be prevented, laws must provide explicit standards for those who apply them. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) and cases cited therein. As stated in *Grayned,* supra:

> "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." 92 S.Ct. at 2299.

The subject ordinance proscribes loitering, wandering, or remaining in a public place *for the purpose of begging.* What sort of conduct on the part of an individual would indicate that his purpose was to beg? The standard of "for the purpose of begging" is not certain, for what might appear to one policeman to manifest such purpose might not to another. I believe that this ordinance furnishes a covenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure."' Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940) ; *Papachristou,* supra.[1]

For example, imagine the following situation at the corner of Congress and Stone in downtown Tucson: a group of Salvation Army workers soliciting contributions; (2) a blind man playing his accordian with a tin cup available for contri-butions; and (3) a group of "hippie-type" individuals engaged in like conduct: No one would dispute that they are all doing exactly the same thing, namely, remaining in a public place for the manifest purpose of begging. I cannot envision a police officer, under these circumstances, arresting the Salvation Army people or the blind man. The fate of the less conventional individuals, however, is more likely to be otherwise.

Far-fetched though this illustration might appear, it serves to point up the evil denounced by *Papachristou,* supra. The wording of the ordinance would permit a policeman on the beat to use it as a tool against those individuals he deemed "undesirables." There being insufficient statutory guidelines, I agree with the lower courts that the ordinance suffers from constitutional infirmity.

---

1. The *Papachristou* decision was a unanimous opinion but POWELL and REHNQUIST, JJ., did not participate.